Anthony WORMLEY, Plaintiff,

v.

ARKLA, INC., Defendant.

No. PB–C–94–1.

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

Sept. 26, 1994.

Eugene Hunt, Hunt & Kelly, Pine Bluff, AR, for plaintiff.

Donna S. Galchus, McGlinchey, Stafford & Lang, Little Rock, AR, for defendant.

## MEMORANDUM AND ORDER

SUSAN WEBBER WRIGHT, District Judge.

This case involves coverage under the Americans with Disabilities Act of 1990 ("the ADA"), 42 U.S.C. § 12101 *et seq.* Both sides have moved for summary judgment on whether the plaintiff, Anthony Wormley, was a disabled individual within the coverage of the ADA. The central issue in determining coverage is the definition of a "current drug user." Persons engaging in the "current" illegal use of drugs are not "individuals with a disability" when the covered entity (in this case, the defendant-employer Arkla) acts on the basis of such use. 42 U.S.C. § 12210(a). An employer may discharge a person who is currently illegally using drugs on the basis of the drug use without incurring liability for discrimination under the ADA. However, a person who is a drug addict but who is "no longer engaging in the illegal use of drugs" is a protected individual under the statute. 42 U.S.C. § 12210(b). The policy objective is to prevent employers from firing persons solely on the basis of their past drug use.

The Court has before it the plaintiff's motion for partial summary judgment, the defendant's response and cross-motion for summary judgment, and the plaintiff's reply and his response to the cross-motion.

After careful consideration, the Court has concluded that the plaintiff was a current drug user at the time of his firing, and therefore was not an individual with a disability under the ADA. Therefore, defendant's motion for summary judgment on this issue is granted, and the plaintiff's partial summary judgment motion is denied.

Also pending is defendant's motion for summary judgment on plaintiff's race discrimination claim under 42 U.S.C. § 2000(e) (Title VII) and under 42 U.S.C. § 1981. The plaintiff filed a response opposing the motion. The motion is denied. The Court finds that genuine issues of material fact exist on this issue.

### I.

The undisputed facts are that Mr. Wormley began working for Arkla, Inc., in 1979. He was terminated from his position as an office supervisor on May 14, 1993 while he was participating for the second time in a drug rehabilitation program at Baptist Medical Center. He was not illegally using drugs on the day of his termination, which was also the day of his release from the rehabilitation program. The stated reason for his termi-

nation was that he had violated the terms of a Conditional Reinstatement Agreement, which he signed in September 1991 after he completed his first drug rehabilitation program.[1]

The Conditional Reinstatement Agreement reads in relevant part:

The undersigned parties hereby agree as follows:

... 2) Arkla will allow Anthony Wormley to be conditionally reinstated provided he agrees to and performs the following:

a) submit to random drug screens at Arkla's discretion at any time during the next two years, at Arkla's expense.

b) continue the treatment plan outlined by The Baptist Rehabilitation Institute and Dr. James McMillan.

c) Upon his return to work, he will perform his duties at Arkla at an acceptable level.

3. If within the next (2) two years, Anthony Wormley is unable to perform his duties at an acceptable level, tests positive on any drug screen, fails to continue his alcohol/drug treatment program, and the conditions set forth as outlined in number 2 above, he will be terminated.

There is no dispute that Mr. Wormley consistently performed his duties at an above-acceptable level. He in fact was cited in 1993 for outstanding job performance for the previous year. Between his resumption of work in September 1991 and his checking into the rehabilitation program for a second time in May 1993, the plaintiff did not test positive for drugs on any of his Arkla drug screens. In Mr. Wormley's deposition, he admitted he used cocaine in April 1993.[2] Mr. Wormley also admitted in the pleadings that he resumed cocaine use in December 1992 or January 1993. He stated in his deposition that in April 1993 his cocaine use had escalated, and this prompted his decision to re-enter rehabilitation. Mr. Wormley's resumption of drug use was unknown to Arkla until Arkla employees spoke with a counselor at Baptist Rehabilitation Institute. Arkla based its decision to fire the plaintiff on information from the counselor. Jack Sanchez, Arkla's director of corporate compliance, stated in his deposition that Mr. Wormley was fired because "it was determined that he had used drugs after he had been admitted to a rehabilitation program, signed a Conditional Reinstatement Agreement, returned to work and agreed not to use drugs for a two-year period."

Additional facts are relevant solely to the plaintiff's claim of race discrimination under 42 U.S.C. 2000(e) (Title VII) and under 42 U.S.C. § 1981. Mr. Wormley is a black male. The defendant also employed a white male supervisor who entered an alcohol rehabilitation program. However, the plaintiff argues that the white supervisor was not required to sign a Conditional Reinstatement Agreement in connection with his continued employment at Arkla after his completion of the rehabilitation program. Other facts concerning the white employee, such as whether his work performance was impaired due to his alcohol use, appear in dispute or are unclear from the pleadings before the Court.

## II.

Summary judgment may be granted if there is no genuine issue as to any material

---

1. In 1991, Arkla instituted a random drug testing program of "safety sensitive" positions, as defined by Department of Transportation regulations. Mr. Wormley held a safety sensitive position. Prior to the commencement of testing, Arkla told employees that if they had a current drug problem, they should speak to their supervisors about entering rehabilitation before the drug tests started. Mr. Wormley did speak to his supervisor about his cocaine use. Mr. Wormley was tested in July 1991, and the test was positive for cocaine. He entered the Baptist Rehabilitation Program under Arkla's Employee Assistance Plan.

2. The Court notes that the defendants, as part of their summary judgment motion, seek to use an unauthenticated medical report and drug screen report as proof of Mr. Wormley's resumption of drug use. Unauthenticated documents are improper as summary judgment evidence. *Nolla Morell v. Reifkohl*, 651 F.Supp. 134, 140 (D.Puerto Rico 1986). The defendant's depositions also contain hearsay about Mr. Wormley's drug use. Hearsay can not be considered in deciding a summary judgment motion. *See Meyer by Wyrick v. Litwiller*, 749 F.Supp. 981, 986 (W.D.Mo. 1990). Therefore the only evidence of Mr. Wormley's drug use the Court considered were Mr. Wormley's admissions, his depositions, and pleadings.

fact, and the moving party is entitled to judgment as a matter of law. *Evans v. Pugh,* 902 F.2d 689, 691 (8th Cir.1990). The burden on the moving party is only to demonstrate that the record does not disclose a genuine issue as to a material fact.

 Both parties agree that the record is sufficient for the Court to decide the issue of ADA coverage. However, with regard to the claim of race discrimination, the plaintiff asserts there are genuine issues of material fact still to be resolved. As the party opposing summary judgment on that claim, the plaintiff must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.'"* *Id.* at 587, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e) and adding emphasis). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Id.* (citations omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted).

### III.

The ADA addresses the illegal use of drugs in 42 U.S.C. § 12114 and § 12210. The defendant argues that § 12214(a) is the subpart applicable to this case, while the plaintiff contends that § 12210(b)(2) controls on these facts. The wording of § 12114 and § 12210 are substantially the same. The former defines "qualified individual with a disability," and the latter defines "individual

with a disability." The real issue is whether subpart (a) or (b) is appropriate in this case.

§ 12114(a) states:

Qualified Individual with a disability. For purposes of this title, the term "qualified individual with a disability" shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use.[3]

§ 12210(b) states in relevant part:

Rules of Construction. Nothing in subsection (a) shall be construed to exclude as an individual with a disability an individual who—

(1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use;

(2) is participating in a supervised rehabilitation program and is no longer engaging in such use....[4]

Mr. Wormley argues that he was not a "current" drug user within the meaning of the ADA because at the time of his firing he was not using drugs and he was in a rehabilitation program, thus putting him squarely within the category designated by § 12210(b)(2). Neither the parties nor the Court have been able to find a case construing the "currently using" language in the ADA.

 The defendant relies on the Equal Employment Opportunity Commission's Technical Assistance Manual for the ADA to support its contention that the plaintiff was a "current" illegal user of drugs and therefore not entitled to any protection under the ADA. Cases decided under the predecessor to the ADA, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.,* as amended, also

---

**3.** 42 U.S.C. 12210(a) states that for the purposes of the Act, " 'individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use."

**4.** 42 U.S.C. 12114(b) states in relevant part: "Rules of construction: Nothing in subsection (a) shall be construed to exclude as a qualified indi-

vidual with a disability an individual who—(1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use; (2) is participating in a supervised rehabilitation program and is no longer engaging in such use...."

provide some guidance because the Rehabilitation Act contains language on current use [5] and because of the close relationship between the Rehabilitation Act and the ADA.[6]

The Technical Assistance Manual states that "current" drug use means testing positive on a test for illegal use of drugs "... where the test correctly indicates that the individual is engaging in the illegal use of a controlled substance." A.D.A.T.A.M. § 8.3. It further states:

> "Current" drug use means that the illegal use of drugs occurred recently enough to justify an employer's reasonable belief that involvement with drugs is an ongoing problem. It is not limited to the day of use, or recent weeks or days, in terms of an employment action. It is determined on a case-by-case basis.
>
>> For example: An applicant or employee who tests positive for an illegal drug cannot immediately enter a drug rehabilitation program and seek to avoid the possibility of discipline or termination by claiming that s/he now is in rehabilitation and is no longer using drugs illegally. A person who tests positive for illegal use of drugs is not entitled to the protection that may be available to former users who have been or are in rehabilitation.... A.D.A.T.A.M. § 8.3.

Regulations on the ADA state that an individual currently illegally using drugs is not an individual with a disability when the employer acts on the basis of such use. 29 C.F.R. § 1620.3. The Interpretive Guidelines accompanying this regulation explain "... the provision is intended to apply to the illegal use of drugs that has occurred recently enough to indicate that the individual is actively engaged in such conduct." A.D.A.T.A.M., Appendix B, B–30.

A House Conference Report on the ADA states that the provision providing coverage for those participating in a supervised rehabilitation program "does not permit persons to invoke the Act's protection simply by showing that they are participating in a drug treatment program. Rather, refraining from illegal use of drugs also is essential." H.R.Conf.Rep. No. 596, 101st Cong., 2d Sess. 64 (1990), U.S.Code Cong. & Admin.News 1990, pp. 267, 573.

In its discussion of recovering drug addicts, the Technical Assistance Manual differentiates past users from current users:

> For example: An addict who is currently in a drug rehabilitation program and has not used drugs illegally for *some time* is not excluded from the protection of the ADA. This person will be protected by the ADA because s/he has a history of addiction, or if s/he is "regarded as" being addicted. Similarly, an addict who is rehabilitated or who successfully completed a supervised rehabilitation program and who is no longer illegally using drugs is not excluded from the ADA. A.D.A.T.A.M. § 8.5 (emphasis added).

In *Teahan v. Metro–North Commuter R. Co.,* 951 F.2d 511 (2d Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 54, 121 L.Ed.2d 24. (1992), a case decided under the Rehabilitation Act, the court stated the relevant time for assessing whether an employee's substance abuse is "current" is at the time of actual firing. *Teahan,* 951 F.2d at 518. However in *Teahan,* at the time of the employee's firing, he had been adequately performing his job for some two and a half months following his completion of a rehabilitation program. This is unlike the case with Mr. Wormley, who was fired as soon as Arkla concluded he had violated the Conditional Reinstatement Agreement.

In another case under the Rehabilitation Act, *Fuller v. Frank,* 916 F.2d 558 (9th Cir. 1990), the plaintiff Fuller had undergone re-

---

**5.** That provision reads: "... the term 'individual with handicaps' ... does not include any individual who is an alcoholic or drug abuser whose current use of alcohol or drugs prevents such individual from performing the duties of the job...." 29 U.S.C. § 706(8)(B) (1990). The Rehabilitation Act, which covers government employers, recipients of federal financial assistance, and federal contractors, was amended again in 1992.

**6.** *See* Henry H. Perritt, Jr., Americans with Disabilities Act Handbook, § 6.11 (1990). Also *see generally* C. Angela Van Etten, Americans with Disabilities Act, Analysis and Implications (1993).

habilitation for alcoholism at least once, but then relapsed. *Id.* at 560. Fuller and his employer, the U.S. Postal Service, then entered into a "last chance agreement," which warned Fuller that his failure to meet certain conditions for at least 12 months would equal "just cause for his removal." *Id.* Two months later, Fuller was discovered drinking on his route. The decision to fire him was made February 27, 1986, effective March 17, 1986. Fuller argued that he entered a treatment program before his job removal became effective, so his employer should have awaited the outcome of the treatment or reinstated him. *Id.* at 562. The court responded:

> ... if Fuller's approach were the law, an employee could conceivably forestall dismissal indefinitely by repeatedly entering treatment whenever dismissal becomes imminent due to a relapse. The last chance agreement would have been meaningless had Fuller been allowed another chance to obtain treatment after having been informed that further violations would not be tolerated. *Id.*

The reasoning in *Fuller* lends further support to the defendant's argument that entering a rehabilitation program does not immediately convert a "current" user into a individual with a disability protected under the ADA.

■ In his deposition, Mr. Wormley admits that he used cocaine in April 1993 and that his use had escalated during that month. He also admits that after his rehabilitation in 1991, he resumed cocaine use in December 1992 or January 1993. The defendant stated that before it took the adverse employment action, it learned of Mr. Wormley's resumption of drug use from a counselor at the Rehabilitation Center. The Court finds that the plaintiff's drug use prior to his second visit to the drug rehabilitation program was "current" use under the ADA. The drug use was sufficiently recent to justify an employer's reasonable belief that it was an ongoing problem rather than a problem that was in the past.

Since Mr. Wormley was a current drug user at the time of his termination, he is not protected under the ADA.

## IV.

■ For a Title VII race discrimination action based on an alleged wrongful discharge, the elements of a prima facie case are a showing that the plaintiff: 1) belongs to a racial minority; 2) was qualified for the job he held and satisfied its normal requirements; 3) was fired from the position.[7] *Johnson v. Arkansas State Police,* 10 F.3d 547, 551 (8th Cir.1993).

■ Where the claim of discrimination was based solely on a claim of disparate treatment between white and black employees, the Eighth Circuit has analyzed the plaintiff's claim under the test in *Jones v. Frank,* 973 F.2d 673 (8th Cir.1992), which dealt with gender discrimination in the context of job reinstatement. *Williams v. Ford Motor Co.,* 14 F.3d 1305, 1308. The *Jones* test for a prima facie case is: 1) the plaintiff is a member of a protected class; 2) who was qualified for job reinstatement; 3) but who was denied reinstatement; 4) while a similarly situated employee outside his protected class, with a similar work history, was reinstated. *Jones,* 973 F.2d at 676.

■ The defendants indirectly argue that the white employee was not similarly situated because the plaintiff was a cocaine user and the white employee was an alcohol abuser. In determining whether employees are similarly situated for purposes of establishing a prima facie case, a court should consider "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Williams,* 14 F.3d at 1309. Here both the plaintiff and the white employee were engaged in substance abuse. It is a genuine issue of material fact as to whether they were similarly situated.

■ The plaintiff has stated a cause of action under either *Johnson* or *Jones.* Mr.

---

7. A fourth element is sometimes discussed—that of showing the position remained open and was ultimately filled by a person outside the protected class. However, this last element is not required for a prima facie case in a Title VII action. *Williams v. Ford Motor Co.,* 14 F.3d 1305, 1308 (8th Cir.1994) (citations omitted).

Wormley has stated that he is black, that his job performance was above the acceptable level, and that he was fired. Mr. Wormley also has alleged there was a white Arkla employee with the same job duties as himself, who had an alcohol abuse problem, entered rehabilitation, and was not fired.

▮ While there are facts that permit the inference of a discriminatory intent in this case, other inferences could be made which would support the defendant's position that no racial discrimination occurred. When considering a motion for summary judgment, the Court can not make credibility determinations nor can it choose between competing inferences. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir.1993) (citations omitted). In addition to the problem of competing inferences in this case, there are factual issues which, if more developed, would shed light on the motive for Arkla's actions. Summary judgment is particularly inappropriate for settling issues of intent or motive, *Id.* at 1042.

Therefore, the defendant's motion for summary judgment on the race discrimination claim is denied.

## V.

In summary, the plaintiff's motion for partial summary judgment finding that the plaintiff is covered by the ADA is denied. The defendant's cross-motion for summary judgment finding that the plaintiff is not covered by the ADA is granted. The defendant's motion for summary judgment on the race discrimination claim is denied.

IT IS SO ORDERED.