1996 SD 132

**CITY OF SIOUX FALLS, Employer and Appellant,**

v.

**Steven C. MILLER, Employee and Appellee.**

**No. 19399.**

Supreme Court of South Dakota.

Considered on Briefs May 24, 1996.

Decided Nov. 6, 1996.

R. Shawn Tornow, Chief Assistant City Attorney, Sioux Falls, for employer and appellant.

Dennis C. McFarland, Sioux Falls, for employee and appellee.

PER CURIAM.

[¶ 1] In this case we are called upon to determine whether an employee fired for continuing drug abuse was suffering from a disability which precluded his discharge. Under the particular circumstances, we conclude the discharge was proper and reverse the Sioux Falls Civil Service Board's order directing reinstatement.

## FACTS

[¶ 2] Steven C. Miller [1] was employed full-time with the Sioux Falls Parks Department since 1977. Through 1993, his annual performance evaluations were adequate or better and each year he received a merit raise. Over the Labor Day weekend in 1994, he was assigned to the Laurel Oaks pool. On Saturday, a supervisor tried several times to contact him via radio and received no response. The supervisor found Miller at his duty sta-

tion apparently vomiting into a bucket and suspected he may have been intoxicated or under the influence of something. A park ranger was called to the scene, and the ranger was also of the opinion Miller was under the influence. A breathalyzer test administered to him indicated there was no alcohol present in Miller's breath. At noon that day, Miller's girlfriend called his supervisor to advise she was taking Miller home because he was sick with the flu.

[¶ 3] Following this incident, Park Superintendent David Fischer and Miller's immediate supervisor Diane Gildemaster met to discuss the incident and Miller's recent performance. Over the previous six months, his productivity had declined, and he had accidents using large machinery resulting from poor judgment, which raised safety concerns. In addition, he began to heavily use vacation time and sick leave for single days, usually Mondays and Fridays, without advanced planning. This led Miller's supervisors to be concerned he was involved in alcohol or substance abuse. His poor performance over the prior six months, coupled with the Labor Day weekend incident "began to paint a picture of a question ... as to whether Steve was physically fit to handle his responsibilities as a park service worker."

[¶ 4] The matter was discussed with Miller at a meeting on September 9, where he admitted he had a drinking problem and had been through treatment in July which had helped a little but had not solved the problem.[2] Restrictions were placed on his use of sick leave (only upon advanced notice and with a physician's approval), and vacation (he could not take vacation on Mondays or Fridays). Miller was also informed he would be required to undergo a fitness-for-duty physical (which would include a screening test to detect the presence of alcohol and drugs) to determine if he was physically able to perform his job responsibilities. Miller was

1. Miller was represented by attorney Dennis C. McFarland who prepared and filed appellee's brief. After the brief was filed, we granted Mr. McFarland's motion to withdraw as counsel, and Miller now proceeds pro se.

2. Miller testified that he was charged with his fourth DWI in February 1994, and went to out-

patient treatment as a result. He informed his immediate supervisor of these events. He feared that a DWI conviction might affect his job, and claims this fear exacerbated his pattern of alcohol use. He also testified that he had been through out-patient treatment four times.

found to be fit for duty, but the physician who conducted the exam recommended additional measures to check his alcohol and drug use. At the September 9 meeting, he was also advised that continued poor performance or failure to comply with the additional requirements could result in termination.

[¶ 5] On October 12, 1994, Park Superintendent Fischer sent a memorandum to Miller identifying three additional requirements:

1. You are drug and alcohol-free at all times while on duty.

2. For the next 90 days, you submit to drug/alcohol screening on the request of management.

3. You submit to an assessment through the Employee Assistance Program (EAP) and make the results and recommendations from the assessment available to the Personnel Department. The assessment appointment will be scheduled by City management.

Miller was informed that failure to comply with these requirements would be cause for termination. He signed the memo on October 13, 1994. This memo in effect established the conditions for a 90–day probationary period.

[¶ 6] Miller participated in the EAP program and again began out-patient counseling to address his alcoholism. On Monday, November 14, 1994, an unannounced alcohol and drug test was administered to Miller. A few days later, Sioux Falls management was advised the test was positive for the presence of cocaine. On November 17, Miller was advised of the test results, and suspended without pay until further notice. He admitted to his immediate supervisor his alcohol consumption was affecting his job performance, and admitted to using cocaine (a felony in South Dakota punishable by five years in prison). Sioux Falls directed Miller to meet with his counselor on that day, which he did. His counselor recommended he obtain in-patient treatment. That Saturday, November 19, Miller was admitted into a 30–day treatment program.

[¶ 7] On Wednesday, November 23, Park Superintendent Fischer and Sioux Falls' personnel officer went to the treatment center to conduct a pre-termination meeting. They met with Miller and his counselor. The counselor advised that Miller's alcoholism was a very serious, long-term problem which would be a daily battle. The counselor also advised that Miller abused alcohol and illegal drugs and was also addicted to video lottery, making it difficult for him to function.[3] Following the meeting, it was decided Miller would be terminated. Apparently, there was no written notice of discharge setting forth the basis for Miller's termination.

[¶ 8] Miller filed a grievance requesting a hearing before the Sioux Falls Civil Service Board (Board) to determine if there was just cause for his dismissal. At the hearing, Miller admitted he had violated the restriction requiring him to be drug- and alcohol-free while on duty. He further conceded he understood his use of alcohol or drugs while off-duty could cause residue to remain in his bloodstream and affect him when on-duty. Finally, he testified he understood the condition of probation prohibited alcohol or drug use while off-duty, but claimed he was powerless to control his use. The Board made the following findings:

### V.

[Miller] has admitted that he is an alcoholic and that he has used drugs.

### VI.

[Miller] at all times material herein is capable of performing the essential functions of his job.

### VII.

[Miller] never consumed alcohol nor used drugs while on duty with the City of Sioux Falls.

### VIII.

[A]lcoholism is a disease which causes a disability.

**3.** Miller was also diagnosed with hypertension, depression, and avoidance traits.

IX.

[Miller's] violation of the conditions contained in the October 12, 1994 Memorandum from the City of Sioux Falls was caused by his disability.

Based on these findings, the Board concluded there was no just cause for Miller's termination, and entered an order reinstating him. The circuit court affirmed and Sioux Falls appeals.

## STANDARD OF REVIEW

[¶ 9] As this case involves an appeal of the decision of the Sioux Falls Civil Service Board, an administrative agency,[4] our review is governed by SDCL 1–26–37:

An aggrieved party or the agency may obtain a review of any final judgment of the circuit court under this chapter by appeal to the Supreme Court. The appeal shall be taken as in other civil cases. The Supreme Court shall give the same deference to the findings of fact, conclusions of law and final judgment of the circuit court as it does to other appeals from the circuit court. Such appeal may not be considered de novo.

"In appeals from administrative agencies, when the issue is a question of law, the decisions of the agency and the circuit court are fully reviewable. When the issue is a question of fact, this court determines whether the agency's findings are clearly erroneous." *Boyles v. South Dakota Div. of Criminal Investigation,* 444 N.W.2d 727, 728 (S.D. 1989) (citation omitted).

## ISSUES

[¶ 10] **I. Did the Board and the circuit court err in concluding that Sioux Falls lacked just cause to terminate Miller?**

■ [¶ 11] Sioux Falls argues its termination of Miller was supported by its ordinances relating to discharge of its employees. Miller believes that his violation of the conditions of his probation was caused by his alcoholism, a disability, and that he was fired

for reasons relating to this disability. This first issue requires us to focus only on whether Miller's termination was consistent with the causes for which a Sioux Falls municipal employee may be terminated.

[¶ 12] Whether the facts and circumstances surrounding an employee's termination are sufficient to constitute just cause is fully reviewable. *Kleinsasser v. City of Rapid City,* 440 N.W.2d 734, 737 (S.D.1989). "The standard for determining whether misconduct rises to the level which justifies discharging an employee is lower than that which determines whether an employee's misconduct will deprive him of unemployment compensation." *Id.* (citation omitted). According to SDCL 9–14–15, a civil service employee such as Miller "may be removed only pursuant to the provisions of the ordinance." Thus, the issue is whether the admitted misconduct of Miller was sufficient to be considered just cause for termination under the ordinance.

[¶ 13] The ordinance at issue here is Ordinance 30–46, relating to the causes for removal, discharge or suspension of a Sioux Falls municipal employee. It states in relevant part:

The following will be considered as cause for discharge, suspension, or reduction of an officer or employee in the classified civil service, although discharges, suspensions, or reductions may be made for other causes:

.     .     .     .     .

(4) Has violated any lawful and reasonable official regulation or order, or failed to obey any lawful or reasonable direction made and given by his superior officer, where such violation or failure to obey amounts to an act of insubordination or a serious breach of proper discipline, or resulted or reasonably might be expected to result in loss or injury to the city, or to the public, or to the prisoners or wards of the city;

4. Under the South Dakota Administrative Procedure Act, SDCL 1–26–1(1), an agency is defined to include "any unit of local government ... [where it] is specifically made subject to this chapter by statute[.]" SDCL 9–14–14 authorizes

municipalities to adopt an ordinance establishing a civil service system for its municipal employees, and states that "Any final order of a civil service board may be appealed to the circuit court pursuant to chapter 1–26."

(5) Has been guilty of acts constituting insubordination or of any conduct unbecoming an officer or employee of the city;

(6) Has been intoxicated or impaired by the use of illegal drugs and alcohol while on duty;

[¶ 14] The Board heard testimony from several of Miller's supervisors and from Miller himself. It found he violated the conditions of his probation. It then vaulted to the conclusion that his violation "was caused by his [alcoholism] disability." On this basis the Board rested its ultimate decision that "Miller was terminated by the City of Sioux Falls for reasons relating to a disability and, accordingly, the City has not met its burden [to prove just cause for termination]." We are compelled to conduct a full review to determine whether this decision is correct. *Boyles,* 444 N.W.2d at 728; *Kleinsasser,* 440 N.W.2d at 737.

[¶ 15] The provisions of Ordinance 30–46 plainly permit termination of an employee who "[h]as failed to obey any lawful or reasonable direction made and given by his superior officer, where such violation or failure to obey amounts to an act of insubordination or a serious breach of proper discipline, or resulted or reasonably might be expected to result in loss or injury to the city, or to the public, or to the prisoners or wards of the city[.]" It also states termination is justified if an employee "[h]as been guilty of acts constituting insubordination or of any conduct unbecoming an officer or employee of the city[.]"

[¶ 16] An employee's failure to comply with agreed upon terms and conditions of a probationary period, especially when he was notified and acknowledged that failure to comply could result in dismissal, falls within the "just cause" defined in subsections (4) and (5) of the ordinance. Miller himself admitted he had violated the terms of his probationary period requiring him to remain drug- and alcohol-free, and that he understood at the time he used cocaine that such use would be a violation. The Board found Miller had violated the conditions of his probation. In the presence of such a finding, it was error to conclude Miller's discharge was not justified by his misconduct.

[¶ 17] The record does not indicate the Board or the circuit court considered that failure to obey the directions of a supervisor or insubordination constitute misconduct which provides just cause for termination under Ordinance 30–46(4) and (5). Instead, the Board limited its inquiry to whether Miller had violated subdivision (6) of Ordinance 30–46 which provides that just cause to dismiss an employee exists if an employee has been "intoxicated or impaired by the use of illegal drugs and alcohol while on duty." Although there was conflicting testimony at the hearing, the Board found Miller "never consumed alcohol nor used drugs while on duty[,]" which supports its conclusion that there was no just cause under subdivision (6) to dismiss him. Before this Court, the parties' dispute can be narrowed to whether subsection (6) prohibits actual use while on duty or prohibits intoxication or impairment while on duty. It is unnecessary for us to determine which interpretation should prevail or whether the existence of illegal drugs in the bloodstream while on duty falls within either interpretation because the discharge was justified under subsections (4) and (5) of the ordinance.

[¶ 18] Without question, Miller failed to remain drug- and alcohol-free during his probationary period, and his failure to abide by those direct orders constitutes just cause for termination under Ordinance 30–46(4) and (5). Both the Board and the circuit court committed an error of law when they concluded that Miller's discharge was not based on just cause delineated in the ordinance. The only remaining question, then, is whether some other authority might preempt this ordinance and extend to Miller protection from misconduct-related discharge. This brings us to the second issue raised by Sioux Falls.

[¶ 19] **II. Did the Board and the circuit court err in concluding that the term "disability" extends to afford protection to employees involved in current alcohol and illegal drug use?**

[¶ 20] The Board concluded, and the circuit court agreed, Miller's violation of the conditions of probation was "caused by his

[alcoholism] disability," and "discharge of an employee cannot be for a disability." On this basis, Sioux Falls was ordered to reinstate Miller. Sioux Falls takes the position Miller's misconduct is distinct from his status as an alcoholic, and that he may be held to the same standards as other employees even if his unsatisfactory behavior is related to his alcoholism.

[¶ 21] Sioux Falls' ordinances relating to discipline and termination of employees state an employee's disability cannot provide the basis for "just cause" to discharge and define the term disability. Ordinance 30–45 states:

No person or employee holding an office or position classified and graded under the provisions of this chapter shall be suspended, removed, discharged or reduced from his position, except for just cause, which shall not be race, creed, color, sex, ancestry, national origin, political or religious affiliation, or disability.

The term "disability" is defined by Ordinance 30–1 as:

a physical or mental impairment that substantially limits one or more of the major life activities of an employee and/or applicant for employment. A qualified individual with a disability means the disabled individual who, with or without reasonable accommodation, can perform the essential functions of the employment position he holds or desires.

Despite the fact that this ordinance defines "disability," the Board concluded "Ordinance 30–45 regarding the use of the word 'disability' is not clear or defined and should be interpreted in the light most favorable to the employee." The Board determined that Miller's alcoholism is a disability which prevented him from complying with the condition of his probation that he remain drug- and alcohol-free. Additionally, the fact that he was suspended on November 17, entered in-patient treatment on November 19, and was fired on November 23 while in treatment, apparently factored in to the Board's decision that Miller's termination was based on his disability.

[¶ 22] This case requires us to consider, for the first time, the distinction between a discriminatory termination based solely on a disability and a proper discharge justified by misconduct of an employee with a disability.[5] This case is before us as an appeal from an administrative agency's order for reinstatement; it does not arise from a claim of an unfair labor practice with the State Department of Human Rights under SDCL 20–13–10, an alleged violation of federal law such as the Americans with Disabilities Act, or his civil rights. In reviewing this claim, we are ultimately guided by SDCL 9–14–15 which provides a civil service employee may be removed only for just cause as defined by Sioux Falls' ordinance, and by Ordinance 30–45 which provides that "just cause shall not be … disability."

[¶ 23] Although we have not previously ruled on the distinction between the condition of alcoholism and alcohol-related misconduct, many federal circuit courts of appeal have considered the matter.[6] One of the most recent cases to discuss the subject of chemical abuse-related misconduct of employees is *Collings v. Longview Fibre Co.*, 63

---

5. In *Wangen v. Knudson*, 428 N.W.2d 242 (S.D. 1988), we reviewed a claim of intentional infliction of emotional distress brought by an employee whose employer declared him to be an alcoholic and gave him an ultimatum to enter treatment or be fired. In that case, however, the employee was never terminated and we had no occasion to consider the issues presented here. Cf. *Strackbein v. Fall River County Hwy. Dep't*, 416 N.W.2d 270 (S.D.1987) (medical condition [vertigo] could interfere with employee's job performance and public safety, and support just cause for termination); *Hopes v. Black Hills Power & Light*, 386 N.W.2d 490 (S.D.1986) (employment of epileptic was terminable at will, and her total disability could be the basis for discharge).

6. It is helpful to consider the federal standards for making a claim of discriminatory discharge based on a disability. In such cases, once an employer offers a legitimate, nondiscriminatory reason for discharge, the burden shifts to the employee to demonstrate that the articulated reason is merely a pretext for handicap discrimination. *Collings v. Longview Fibre Co.*, 63 F.3d 828, 833 (9th Cir.1995). Here, Sioux Falls had a valid, non-discriminatory basis upon which to fire Miller. Using this analysis, the burden should then shift to Miller to establish that failure to comply with the terms and conditions of his probation was only a pretext to fire him because of his alcoholism.

F.3d 828 (9th Cir.1995). The *Collings* court summarized:

> Courts have recognized a distinction between termination of employment because of misconduct and termination of employment because of a disability. In *Little v. FBI*, 1 F.3d 255, 259 (4th Cir.1993), the court found that an alcoholic employee was discharged because of his misconduct of being intoxicated while on duty, rather than because of his alcoholism handicap, and that therefore, the discharge did not violate the Rehabilitation Act. The court noted that alcoholics and drug addicts are not exempt from reasonable rules of conduct, such as prohibitions against the possession or use of alcohol or drugs in the workplace, *id.* at 258, and employers must be allowed to terminate their employees on account of misconduct, "irrespective of whether the employee is handicapped." *Id.* at 259.

63 F.3d at 832 (footnotes omitted).

[¶ 24] Indeed, most of the cases considering the distinction have sided with the employer's right to terminate an employee with a drug- or alcohol-related disability based on misconduct which the employee claims is caused by that disability. *See Taub v. Frank*, 957 F.2d 8 (1st Cir.1992)(alcoholic postal employee discharged because of criminal conduct); *Copeland v. Philadelphia Police Dep't*, 840 F.2d 1139 (3d Cir.1988), *cert.* *denied* 490 U.S. 1004, 109 S.Ct. 1636, 104 L.Ed.2d 153 (1989)(police officer fired for use of illegal drugs); *Little v. FBI*, 1 F.3d 255 (4th Cir.1993)(alcoholic special agent terminated for on-duty intoxication); *Maddox v. University of Tennessee*, 62 F.3d 843 (6th Cir.1995)(alcoholic assistant football coach terminated for off-duty DUI and bad publicity surrounding incident); *Collings*, 63 F.3d 828 (drug-addicted manufacturing workers fired for smoking and selling marijuana at work); *Fuller v. Frank*, 916 F.2d 558 (9th Cir.1990)(alcoholic postal carrier discharged for leaving postal vehicle unattended for 45 minutes while drinking); *Williams v. Widnall*, 79 F.3d 1003 (10th Cir.1996)(alcoholic civilian air force employee terminated for making threats against fellow employees when drunk). *But see Teahan v. Metro–North Commuter RR Co.*, 951 F.2d 511 (2d Cir.1991), *cert. denied*, 506 U.S. 815, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992) (alcoholic discharged for excessive absenteeism created a genuine issue of material fact about whether discharge was causally related to his disability). Judicial decisions almost uniformly recognize that employers have the right to prohibit drug- and alcohol-related misconduct in the work place and that current drug or alcohol use by an employee is not protected under the express terms of the Rehabilitation Act (29 U.S.C. §§ 791 and 794),[7] the Ameri-

---

7. The Rehabilitation Act was amended to except from its protection addicted persons who are current users of controlled drugs or alcohol. PubLNo 101–336, § 512, 104 Stat 376–77 (codified as amended at 29 USC § 706(8) and (22)). As amended, 29 USC 706 now provides, in relevant part:

> (8)(C)(i) For purposes of subchapter V of this chapter, the term "individual with a disability" does not include an individual who is currently engaging in the illegal use of drugs, when a covered entity acts on the basis of such use.
> (ii) Nothing in clause (i) shall be construed to exclude as an individual with a disability an individual who—
> > (I) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use;
> > (II) is participating in a supervised rehabilitation program and is no longer engaging in such use; or
> > (III) is erroneously regarded as engaging in such use, but is not engaging in such use;

except that it shall not be a violation of this chapter for a covered entity to adopt or administer reasonable policies or procedures, including but not limited to drug testing, designed to ensure that an individual described in subclause (I) or (II) is no longer engaging in the illegal use of drugs.

> (iii) Notwithstanding clause (i), for purposes of programs and activities providing health services and services provided under subchapters I, II and III of this chapter, an individual shall not be excluded from the benefits of such programs or activities on the basis of his or her current illegal use of drugs if he or she is otherwise entitled to such services.
> (iv) For purposes of programs and activities providing educational services, local educational agencies may take disciplinary action pertaining to the use or possession of illegal drugs or alcohol against any student who is an individual with a disability and who currently is engaging in the illegal use of drugs or in the use of alcohol to the same extent that such disciplinary action is taken against students

cans with Disabilities Act (42 U.S.C. § 12114), and the Drug–Free Workplace Act of 1988 (41 U.S.C. § 701 et seq.).[8] "[T]he ADA clearly contemplate[s] distinguishing misconduct from one's status as an alcoholic." *Williams*, 79 F.3d at 1007.

[¶ 25] The facts presented here do not warrant any conclusion other than that reached earlier, i.e., that Miller was justifiably discharged for misconduct. He admitted he violated the condition requiring him to be drug- and alcohol-free, but claimed his alcoholism rendered him powerless to control his use of cocaine. Like the plaintiffs in many of the federal cases cited, Miller argues his alcoholism caused him to be unable to follow the direct order to abstain from alcohol or drug use and his cocaine use was merely a manifestation of the disability of alcoholism. *See, e.g., Maddox*, 62 F.3d at 846 (rejecting employee claim that off-duty drunk driving was causally connected manifestation of alcoholism disability caused by difficulty operating motor vehicle while under influence of alcohol). Indeed, the misconduct at issue here (cocaine use) is arguably even more distinct than those cases because Miller does not claim his disability is drug addiction; rather, his disability is alcoholism. The connection between Miller's cocaine use (which he claims was an isolated incident) and his alcoholism is tenuous at best, and can hardly be characterized as an attribute caused by his disability.

[¶ 26] An employer is entitled to take appropriate action with respect to egregious misconduct, regardless of whether the employee is disabled. This reasoning was well-articulated in *Williams*:

> We cannot adopt an interpretation of the statute which would require an employer to accept egregious behavior by an alcoholic employee when that same behavior, exhibited by a nondisabled employee, would

require termination.... [A]n employer may hold a[n] ... alcoholic to the same standard of performance and behavior to which it holds others, even if any unsatisfactory performance or behavior is related to the person's ... alcoholism. We agree with the view that the Act does not protect alcoholics or drug addicts from the consequences of their misconduct.

79 F.3d at 1006 (citations and quotations omitted). Sioux Falls is entitled to enforce its Drug and Alcohol Abuse Policy which provides that the use, sale, and possession of illicit controlled drugs and alcohol-related criminal convictions are unacceptable because they may affect job performance and public confidence in its ability to meet its responsibilities. All employees are held to these standards and Miller is not exempt merely because he is an alcoholic.

[¶ 27] Both parties contend the ADA provides persuasive authority for their position and, indeed, it does lend insight into the resolution of this issue. 42 U.S.C. § 12114 provides:

**(a) Qualified individual with a disability.** For purposes of [the ADA], the term "qualified individual with a disability" shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use.

**(b) Rules of construction.** Nothing in subsection (a) ... shall be construed to exclude as a qualified individual with a disability an individual who—

(1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use;

who are not individuals with disabilities. Furthermore, the due process procedures at 34 CFR 104.36 shall not apply to such disciplinary actions.
(v) For purposes of sections 793 and 794 of this title as such sections relate to employment, the term "individual with a disability" does not include any individual who is an alcoholic whose current use of alcohol prevents such individual from performing the duties of the

job in question or whose employment, by reason of such current alcohol abuse, would constitute a direct threat to property or the safety of others.

8. Both parties concede that the Americans with Disabilities Act does not control the analysis here, but each also contend that it provides persuasive authority and insight into the issues here.

(2) is participating in a supervised rehabilitation program and is no longer engaging in such use; or

(3) is erroneously regarded as engaging in such use, but is not engaging in such use;

except that it shall not be a violation of this chapter for a covered entity to adopt or administer reasonable policies or procedures, including but not limited to drug testing, designed to ensure that an individual described in paragraph (1) or (2) is no longer engaging in the illegal use of drugs.

**(c) Authority of covered entity.** A covered entity—

(1) may prohibit the illegal use of drugs and the use of alcohol at the workplace by all employees;

(2) may require that employees shall not be under the influence of alcohol or be engaging in the illegal use of drugs at the workplace;

(3) may require that employees behave in conformance with the requirements established under the Drug–Free Workplace Act of 1988 (41 USC 701 et seq.);

(4) may hold an employee who engages in the illegal use of drugs or who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employees; . . .

Using the definitions of "qualified individual with a disability" contained in this statute as a guide for analysis, Sioux Falls contends § 12114(a) would initially place Miller outside the definition based on his drug use at the time of his employment. However, Miller contends he falls within the definition of "qualified individual with a disability" because § 12114(b)(1) and (2) extend protection to persons who are participating in, or have successfully completed, a rehabilitation program and are no longer engaging in the use of illegal drugs or alcohol. Miller argues the

Board's decision should be affirmed because "The City is not allowed to terminate an individual with a disability who is participating in a supervised rehabilitation program[,] . . . especially in light of the fact that he was just beginning to seek help in a supervised rehabilitation program." [9]

[¶ 28] "[E]ntering a rehabilitation program does not immediately convert a 'current' user into [an] individual with a disability protected under the ADA." *Wormley v. Arkla, Inc.,* 871 F.Supp. 1079, 1084 (E.D.Ark.1994). "[A]n individual currently illegally using drugs is not an individual with a disability when the employer acts on the basis of such use." *Id.* at 1083. Although it is recognized that a "[r]easonable accommodation for the handicap of alcoholism requires, *inter alia,* that an employee be given time off to participate in a treatment program[,]" an employer is under no obligation to wait until an employee successfully completes rehabilitation. *Williams,* 79 F3d at 1006. The term "reasonable accommodation" used in the ADA does not mean protracted accommodation which merely enables an addicted employee to continue abusing substances. *Fuller,* 916 F.2d at 561. In fact, Miller's situation is similar to several other cases in which an alcoholic or drug-addicted employee has a history of unsuccessful treatment, continues to engage in alcohol- or drug-related misconduct, and then claims protection from discharge by entering a rehabilitation program. *See Williams,* 79 F.3d 1003; *Fuller,* 916 F.2d 558; *Wormley,* 871 F.Supp. 1079. As the Ninth Circuit Court of Appeals summed it up:

Fuller's previous attempts at recovery had not been successful and there was no guarantee that this one would have been successful either. In addition, if Fuller's approach were the law, an employee could conceivably forestall dismissal indefinitely by repeatedly entering treatment whenever dismissal becomes imminent due to a relapse. The last chance agreement would have become meaningless had Fuller been

9. This representation is not entirely accurate. By the time Miller entered in-patient treatment, he had been through five out-patient treatment programs. This includes the EAP program in which he was involved as a condition of his probation, and in which he was participating at the time the drug test revealed his use of cocaine.

allowed another chance to obtain treatment after having been informed that further violations would not be tolerated.

*Fuller,* 916 F.2d at 562.

[¶ 29] Here, Miller was involved in the EAP counseling and treatment program at the time he tested positive for cocaine use. Despite his participation in treatment for alcoholism, it was obvious he was a current user of illegal drugs at the time of his termination, and the termination was directly related to illegal drug use. Employees who have undergone treatment and counseling for alcoholism or drug use but continue to engage in such unacceptable behavior plainly do not fall within the definition of "qualified individual with a disability" under the ADA. Likewise, Ordinance 30–45 which prevents resort to an employee's disability to provide just cause for termination should not draw within its protection employees who actively engage in the illegal use of drugs and alcohol. Furthermore, Miller's misconduct was in direct violation of the conditions of his probation and of Sioux Falls' general policy on drug and alcohol abuse.

[¶ 30] Based on a full review of the facts and circumstances, it is apparent Sioux Falls established just cause to terminate Miller based on misconduct. Miller cannot assert his current misconduct as the product of a protected disability merely by entering a rehabilitation program.

[¶ 31] Reversed.

[¶ 32] MILLER, C.J., and SABERS, AMUNDSON, KONENKAMP and GILBERTSON, JJ., participating.