1996 SD 77

Robert GREGOIRE, Plaintiff and Appellant,

v.

Gary IVERSON, Esther Girard, Ralph Westergaard, Paul Hasse, and Todd Christensen, as Commissioners for the County of Clay, State of South Dakota, and Clay County, South Dakota, a Public Corporation, Defendants and Appellees.

No. 19287.

Supreme Court of South Dakota.

Considered on Briefs March 14, 1996.

Decided June 26, 1996.

Thomas E. Alberts, Avon, for plaintiff and appellant.

James E. McCulloch of Minick and McCulloch, Vermillion, for defendants and appellees.

PER CURIAM.

[¶ 1] Robert Gregoire (Gregoire) appeals from a circuit court judgment denying his appeal of the decision of the Clay County Commission [1] (County) to install a roadway with culverts (rather than a bridge) near Gregoire's property.

### FACTS

[¶ 2] This case concerns water drainage on and near Gregoire's property. Both the old and new channels of the Vermillion River cross his land. The area at issue, referred to by the parties as point 3 on Exhibit 12, is a point where the old Vermillion River channel crosses a road near Gregoire's residence which is his only access road. This roadway is a township secondary road. This area will be referred to as "the Crossing."

[¶ 3] Originally, a five-span, iron truss bridge crossed this point. It had a 75-foot-long wooden plank roadway which was 16 feet 6 inches in width. The bridge was re-

---

1. In bringing his appeal, Gregoire named as defendants the members of the Clay County Commission, Gary Iverson, Esther Girard, Ralph Westergaard, Paul Hasse, and Todd Christensen. He also named the State of South Dakota and Clay County as defendants. For purposes of clarity, all defendants will be referred to as "County."

moved in 1987 or 1988 because it was unstable. It was replaced with a low-water crossing consisting of a dirt and rock formation with a gravel roadway on top. It had two 30–inch corrugated metal pipes (culverts) inserted to allow water to pass through it. Gregoire did not challenge the removal of the bridge or the low-water crossing roadway as a replacement. This roadway served the area without problem from 1988 to 1993.

[¶ 4] 1993 was a remarkably wet year[2] in the area and extraordinary flooding occurred in many areas. Water breached the banks of both the old and new Vermillion River channels, inundating the surrounding farm land including the Crossing. The Crossing was under water throughout the spring and summer of 1993. The following year, 1994, was also wetter than usual and the Crossing was again overtopped by water, washing out one of the 30–inch culverts.

[¶ 5] In response to the flooding problem, the County requested hydrology and hydraulic studies of the low-water crossing at the site. The studies were forwarded to the State Department of Transportation (DOT) where engineer Terry Jorgenson analyzed the results. Based on his analysis and an application of the minimum federal guidelines for construction of roadway crossings at such areas, Jorgenson provided the County with a recommendation to upgrade the low-water crossing to eliminate future problems.

[¶ 6] On February 15, 1994, the County took formal action to upgrade the low-water crossing. It decided to install at the crossing two 90–inch tubes constructed of corrugated metal with a flat bottom. The span of each culvert would be approximately eight and one-half feet wide and six feet high. The design adopted by the County placed the two culverts four feet apart, covered by a roadway twenty-one feet in length and twenty-four feet in width. According to the minutes of this meeting, this design greatly exceeded the recommendation made by Jorgenson, who had informed the County that one 90–

inch culvert would be sufficient to handle water flow for a 25–year event.

[¶ 7] At its March 1, 1994 meeting, the County heard from several area land owners, including Gregoire, who opposed its decision to upgrade the structure at the Crossing and demanded the installation of a bridge. The meeting minutes also reflect that one person opposed construction of a bridge because more water would cover his land. Gregoire informed the County he intended to appeal their decision, which he did. The County has not made the upgrade, pending the outcome of the appeal.

[¶ 8] The circuit court denied Gregoire's appeal. The court ruled that it had no jurisdiction to consider Gregoire's challenge to the removal of the original bridge in 1987 or 1988 because the matter was time-barred. It also determined that the County's decision to upgrade the Crossing was a discretionary matter because it was on a township road and that it had properly exercised its discretion. From this decision, Gregoire appeals.

## ISSUES

[¶ 9] Gregoire's brief[3] inaccurately states the issue presented as follows:

> Was the determination by the Clay County, South Dakota, Commissioners to replace a bridge which it had removed on the old Vermillion River channel by installing a roadway with two (2) 90 inch tubes, arbitrary, capricious, or an abuse of discretion?

In his argument, he appears to vacillate between challenging the decision to remove the bridge and the decision to upgrade the low-water crossing with two 90–inch tubes. As the County points out in its brief, these are plainly two distinct issues. For that reason, each is individually addressed.

[¶ 10] **I. The circuit court did not err in refusing to consider whether the County's removal of the bridge was proper.**

[¶ 11] Much of Gregoire's brief appears to challenge the removal of the original

---

2. The trial court found that the precipitation encountered in 1993 qualified that year as having been one in which the area experienced at least a 100–year flood event.

3. Gregoire did not file a reply brief.

bridge. It is evident that he would prefer that the County install a new bridge at the Crossing, rather than upgrade the low-water crossing. To the extent that Gregoire challenges the removal of the bridge, his argument must be rejected.

[¶ 12] The circuit court held that any challenge by Gregoire to the removal of the bridge was not timely taken. Conclusion of Law C stated:

This type of appeal is an exclusive remedy pursuant to SDCL 7–8–32; therefore, this court does not have jurisdiction to determine in 1995 whether Clay County's removal of a bridge in 1987 or 1988 was proper factually or legally, or whether replacement of it at that time with a low-water crossing was proper. Those questions are time barred.

To allow Gregoire to present such a claim now would be an impermissible collateral attack on the County's earlier decision to remove the bridge. *Wold v. Lawrence County Comm'n*, 465 N.W.2d 622, 624 (S.D.1991). Thus, the circuit court properly rejected any claims relating to the earlier decisions of the County to remove the bridge.

[¶ 13] **II. The circuit court did not err in determining the County's decision to upgrade the low-water crossing was proper.**

■ [¶ 14] The only issue Gregoire has properly presented for review is whether the circuit court erred in determining that the County's action in upgrading the low-water crossing was arbitrary and capricious. When we review such actions of a board of county commissioners after an appeal to the circuit court, we apply the clearly erroneous standard to factual findings, but accord no defer-ence to the legal conclusions of the circuit court. *Tri County Landfill Ass'n v. Brule County*, 535 N.W.2d 760, 763 (S.D.1995).

[¶ 15] The parties agree the county has no statutory obligation to construct or maintain a bridge or culvert here because the road at the Crossing is a secondary township road. *See* SDCL 31–14–2.[4] The circuit court concluded that when the County chooses to assume such a responsibility, it has a duty to act reasonably in regard to the construction. Gregoire does not challenge this conclusion.

■ [¶ 16] Rather, his argument is narrowly focused on a claim that the court "applied the wrong factual test" to arrive at its conclusion that the County did not abuse its discretion. The "factual test" which he claims the circuit court applied is whether the action relating to the low-water crossing will cause damage to activity which is down stream from the Crossing. He claims "the Trial Court is required to examine the upstream activity and not the downstream activity because the water which causes [his] damages comes from upstream." His argument is not persuasive.

[¶ 17] The trial court made sixteen findings of fact. Gregoire places undue emphasis on finding XI, which states: "The multiple-pipe structure proposed by Clay County will allow as much water to pass through the structure as would the next downstream structure on this old Vermillion River channel." He ignores the court's other findings which indicate the court considered all of the relevant circumstances, only one of which was a comparison of the proposed structure to the bridge downstream. The circuit court considered the entirety of the circumstances

---

4. SDCL 31–14–2, relating to the county's responsibility for bridges and culverts, reads as follows:

The duty to construct and maintain all bridges and culverts throughout the county, except upon the state trunk highway system, is hereby imposed upon the board of county commissioners, subject to conditions relating to bridges and culverts on secondary highways in townships.

SDCL 31–14–27, relates to construction and maintenance of bridges and culverts on township roads. It reads, in part:

If a township board of supervisors or county highway superintendent within this state re-quests of its board of county commissioners a construction or replacing in its entirety of any bridge or the placing or replacing of any culvert with an opening of sixteen square feet or more including material upon the secondary roads within such township, the board of county commissioners may cause the same to be done and the township shall reimburse the county up to and including five hundred dollars, and any cost in excess of five hundred dollars shall be paid by the county. After the placing or replacing of any culvert as provided in this section, it shall be maintained and kept clean at the expense of the township . . . .

which cause the overtopping of the low-water crossing at issue, including the studies submitted by County. It found the primary flood danger is not posed by the old Vermillion River channel which this structure will cross; the most significant threat is from the new Vermillion River channel. It also found Gregoire did not provide any studies or analysis whatsoever to support his claim that the proposed structure will unreasonably obstruct the natural flow of water under the expectation of a 100–year flood event.

[¶ 18] In short, Gregoire did not provide any evidence to support his claim that engineer Jorgenson's analysis and recommendation should have been rejected by the County. The court concluded that the County acted reasonably at each step: a) in conducting studies of the area when flooding persisted; b) by studying the drainage area, frequency of flood events, and type of road in question; c) in requesting computer-generated analysis of these studies by the state DOT; d) by employing an expert who used federal guidelines in making a recommendation to the County; and e) in considering the recommendation and deciding on a structure which would greatly exceed that recommended. As the party challenging the County's decision, Gregoire has the burden to overcome the presumption that the County acted within its discretion. *See Tri County Landfill*, 535 N.W.2d 760; *Nordhagen v. Hot Springs Sch. Dist.*, 474 N.W.2d 510 (S.D. 1991); *City of Madison v. Clarke*, 288 N.W.2d 312 (S.D.1980); *Moran v. Rapid City Area Sch. Dist.*, 281 N.W.2d 595 (S.D.1979). Gregoire simply did not provide any evidence to rebut these facts or to establish that County acted arbitrarily or that its decision was the result of mere caprice.

[¶ 19] Affirmed.

[¶ 20] MILLER, C.J., and SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, JJ., participating.

