2000 SD 159

**Timothy HOLLANDER, Plaintiff and Appellant,**

v.

**DOUGLAS COUNTY, South Dakota, Defendant and Appellee.**

**No. 21365.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 25, 2000.

Decided Dec. 20, 2000.

Timothy R. Whalen, Lake Andes, SD, Attorney for plaintiff and appellant.

Stephen C. Landon and Michael A. Henderson of Cadwell, Sanford, Deibert & Garry, Sioux Falls, SD, Attorneys for defendant and appellee.

KONENKAMP, Justice.

[¶ 1.] Timothy Hollander was fired from his position as a deputy sheriff for Douglas County. He challenged the decision and, following a trial, the circuit court upheld the discharge. In this appeal, we consider whether Hollander was properly categorized as an employee at will, and if not, whether he was afforded due process, and whether there was sufficient "cause" to support his dismissal. We conclude that he was not an employee at will under the terms of the county's disciplinary policy; however, he was given a due process hearing, and there were sufficient grounds to justify his dismissal.

### Background

[¶ 2.] On the afternoon of January 31, 1999, Deputy Hollander was off-duty at home, entertaining guests at a Super Bowl Party. He was also recovering from the flu. Someone called him to report that a young woman with "a lot of blood" on her

face and clothing was in a public park in Harrison, South Dakota. Hollander telephoned Sheriff Chuck Strehlow to ask him if he would respond to the call, saying, "I'm really not feeling up to it, Chuck. I'm kind of sick." Strehlow, who was on call that weekend, agreed to go.

[¶ 3.] Not long afterwards, Hollander received another call that the Sheriff needed help. Hollander reached Sheriff Strehlow on the radio. According to Hollander, Strehlow said, "Yeah, I got a guy here on a domestic and I need somebody to transport him to Lake Andes. I'm afraid he's going to run on me." Hollander left for Harrison and on his way met Strehlow driving in the opposite direction. As they passed, Strehlow explained on the radio, "I'm en route to the hospital with this gal and you better get there because I think he might run on you." Strehlow later testified that he also told Hollander to "arrest Dwight DeWaard and take him to jail for domestic, simple assault domestic." DeWaard was supposed to be waiting at his residence, as Strehlow had told him he was going to be arrested.

[¶ 4.] On arriving in Harrison, Hollander found DeWaard still at his home. He explained to DeWaard that he was there to take him to jail. DeWaard said, "Why am I the one that has to go to jail when she destroyed my house and beat me up." Seeing some marks on DeWaard's face, Hollander replied, "Well, I can see that. But apparently Sheriff Strehlow has decided that she's worse off than you, and I am ordered by him to take you to jail." Hollander issued DeWaard a citation using a Uniform Traffic Ticket/Complaint. In the box titled "Officer Issuing Summons," Hollander wrote, "C. Strehlow." Immediately below that box was another one for the officer's signature. Hollander left it blank for Strehlow to sign.

[¶ 5.] Hollander read DeWaard his Miranda rights, but did not tell DeWaard that he was under arrest because Hollander believed Strehlow had already arrested him. On the way to the jail in Lake Andes, Deputy Hollander had DeWaard sit on the passenger side of the car without being handcuffed. As Hollander later explained, "I had no fear of Dwight of what he was going to do. I've known him for some time and I didn't see any . . . reason that he was going to become upset or agitated, . . . he was not violent by any means." Hollander later met with Strehlow to discuss the matter before heading home. Strehlow expressed no concern at that time about the way Hollander filled out the ticket. After learning the full extent of the victim's injuries, however, Strehlow charged DeWaard with aggravated assault the next day.

[¶ 6.] DeWaard was later released on bail subject to conditions, including no contact with the victim, Linda Vore. About a week later, Vore telephoned Hollander. He knew Vore and DeWaard as he "was friends with both of them." She said she thought DeWaard had removed some of her clothing from the house they shared, and she believed this violated the bail conditions. Hollander disagreed. She wanted DeWaard arrested. Hollander refused. He told her that most of the things in the house belonged to DeWaard. Hollander knew this, he later explained, because he had earlier spoken to DeWaard and that is what DeWaard told him.

[¶ 7.] Although there was no pending investigation against Vore, and no discussion between the Sheriff and Hollander about bringing a case against her, Deputy Hollander decided to use Vore's call as "an opportunity to question her" about the incident: "I felt she was a suspect in simple assault." According to Sheriff Strehlow's report, Vore admitted to hitting DeWaard first. However, the report went on to detail DeWaard's vicious reprisal. He began hitting her repeatedly, and getting on top of her, he beat her into unconsciousness. Indeed, when Strehlow first encountered Vore, she was bleeding badly from the area of her left eye. She ended up with a fractured cheekbone and eye damage.

[¶ 8.] During their phone conversation, Vore told Hollander that she felt she deserved to have everything in the house because of what DeWaard did to her face. Referring to the Sheriff's report, Hollander responded, "Well, it says you did hit him first." She reacted angrily, screaming "I did not." She insisted the report was false. Then Hollander raised his own voice "to try to get over the top of what she was raised to me." He said, "Well if you're going to change your story and lie about it, that will be between you and the courts because it will come out in court. You'll find out who's telling the truth." Hollander told Vore that he would still deal with the stolen clothes issue. Upset, Vore said that she would contact the Sheriff herself. Nonetheless, Hollander called DeWaard who confirmed for Hollander that he had not taken Vore's clothes, although he admitted he had been to the house. Hollander and Strehlow briefly discussed these matters the next day.

[¶ 9.] Vore told an employee at the safe house where she was staying that Hollander had been rude to her and had spoken to her in a loud, angry manner. The employee complained to Sheriff Strehlow. On February 8th, 1999, Strehlow called Hollander to his office. He told Hollander that he was firing him because of the Vore matter. Strehlow handed Hollander a letter informing him that his employment was terminated as of February 22, 1999. In that letter Strehlow cited SDCL 7–12–11 as authority for his action.[1] Strehlow gave Hollander another letter on February 10, 1999. It declared that his termination was effective immediately, giving the following reasons: Hollander had refused to arrest the aggressor in a domestic disturbance after being directed by the Sheriff to do so; he wrote a ticket with the Sheriff's name, possibly making the arrest illegal; and he was "very rude and unreasonable" with the victim, showing "great favoritism" toward the aggressor.

On the same day, Hollander received a "notice of hearing" from the Douglas County Board of Commissioners. The notice included all of the allegations in Strehlow's letter and explained that Hollander had the right to a hearing, to confront and cross-examine witnesses, to have counsel present, and to offer evidence on his own behalf.

[¶ 10.] The hearing before the county commission took place on February 16, 1999. The entire proceedings, including deliberations, were transcribed by a court reporter. Hollander was present with counsel. His attorney cross-examined the witnesses and presented evidence on Hollander's behalf. After the testimony, the commissioners deliberated in executive session with the State's Attorney present and then announced their unanimous decision to discharge Hollander, in accordance with Strehlow's recommendation. In its written findings of fact, the commission found that Hollander committed "major misconduct" in the performance of his duties in that he "refused to arrest the aggressor in a domestic disturbance after being directed by the Sheriff to do so"; he issued the ticket in the Sheriff's name, "possibly making the arrest invalid"; he yelled at the victim over the phone, "telling her it was her fault that this happened"; and he "was very rude and unreasonable and showed great favoritism toward the aggressor."

[¶ 11.] Hollander appealed the decision to the circuit court, where a bench trial was held on August 25, 1999. In upholding the dismissal, the court ruled that Hollander was an at will employee who could be terminated without cause, but nonetheless, the court found that Hollander was afforded due process. Hollander appeals.

### Analysis and Decision

#### 1. Due Process Termination

[¶ 12.] The gravamen of Hollander's complaint is that he was not af-

---

1. SDCL 7–12–11 provides in part: "the sheriff may relieve any deputy, jailer or clerk of any or all official responsibilities and duties, summarily."

forded due process in his termination. Success in such a claim depends in large part on the presence of a property right in continued employment. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494, 501 (1985) (citations omitted). A property interest worthy of due process protection must be granted or defined by a source independent from the Constitution, such as state law. *Id. See also Hopkins v. Saunders,* 199 F.3d 968, 975 (8th Cir.1999)(citing *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972)).

▮ [¶ 13.] South Dakota is an employment at will state: "An employment having no specified term may be terminated at the will of either party on notice to the other. . . ." SDCL 60–4–4; *Butterfield v. Citibank of South Dakota,* 437 N.W.2d 857, 859 (S.D.1989)(citing *Larson v. Kreiser's Inc.,* 427 N.W.2d 833, 834 (S.D.1988)). Personnel in an employment at will arrangement may be dismissed "at any time for any reason." *Petersen v. Sioux Valley Hosp. Assn.,* 486 N.W.2d 516, 520 (S.D. 1992). Employment at will, therefore, creates no constitutionally protected property interest. *Haddle v. Garrison,* 525 U.S. 121, 125–26, 119 S.Ct. 489, 492, 142 L.Ed.2d 502, 508 (1998) (citations omitted).

▮ [¶ 14.] Hollander argues that he was covered by the Douglas County "Disciplinary Action and Grievance Procedure," taking his employment outside South Dakota's employment at will law.[2] In *Osterkamp v. Alkota Manufacturing,* we recognized a narrow exception: it applies when an employer's discharge policy provides that termination will occur only

for cause. *See Butterfield,* 437 N.W.2d at 859 (S.D.1989)(discussing *Osterkamp v. Alkota Manufacturing,* 332 N.W.2d 275 (S.D. 1983)). The exception can develop in one of two ways. First, an agreement to discharge for cause arises when an employee handbook "explicitly provides, in the same or comparable language that discharge can occur for cause only." *Butterfield,* 437 N.W.2d at 859 (citations and internal quotations omitted); *see also Johnston v. DLORAH, Inc.,* 529 N.W.2d 201, 202 (S.D. 1995). Second, a contract providing that termination will not occur absent cause will be implied "where the handbook contains a detailed list of exclusive grounds for employee discipline or discharge and, a mandatory and specific procedure which the employer agrees to follow prior to any employee's termination." *Butterfield,* 437 N.W.2d at 859.

▮ [¶ 15.] Our central inquiry is whether the county disciplinary policy expressed a clear intention to surrender the statutory right to terminate employees at will. *See Johnston,* 529 N.W.2d at 202. If Hollander can show "that he could have been fired only for good cause," he has a protected property interest in continued employment. *See Hopkins,* 199 F.3d at 975 (citing *Spitzmiller v. Hawkins,* 183 F.3d 912, 916 (8th Cir.1999)). Douglas County's grievance policy provides:

#### 9.1.5  Dismissal

The decision-making authority with the approval of the approval authority may terminate an employee from county employment for *disciplinary purposes.*

(Emphasis added). Language specifying that employees can be dismissed for "disciplinary purposes" denotes a requirement

---

2. Hollander also argues that all public employees "are excepted from the employee at will definition by virtue of *Cleveland Board of Education v. Loudermill."* Our acceptance of such an argument would implicitly repeal SDCL 60–4–4. We note that the plaintiffs in *Loudermill* were classified as civil servants who by statute could be discharged only for cause. *Loudermill,* 470 U.S. at 535, 105 S.Ct. at 1490, 84 L.Ed.2d at 499. Hollander also

relies on *Lee v. South Dakota Department of Health,* in making this argument. 411 N.W.2d 108 (S.D.1987). Like the employees in *Loudermill,* the employees in *Lee* had a property interest granted by an independent source, namely the department's rules and regulations. *Id.* at 112. Consequently, on this point we find Hollander's argument meritless.

of cause before termination can occur. *See* Black's Law Dictionary 476 (7th ed. 1999)(defining discipline or disciplinary as "a sanction or penalty imposed after an official finding of misconduct.") Under the county policy, therefore, an employee could not be disciplined without engaging in some type of misconduct and consequently could not be terminated absent action constituting misconduct.

[¶ 16.] Furthermore, Douglas County's disciplinary procedure does not explicitly reserve the right to terminate employees without notice in "appropriate instances" as did the employer in *Butterfield. See Butterfield,* 437 N.W.2d at 859. In *Petersen* we emphasized that the express reservation by an employer of the right to terminate "at any time or for any reason" overcame language providing that "[e]mployees may be dismissed for any conduct ... deemed contrary to best interests of [employer]...." 486 N.W.2d at 520. Douglas County's disciplinary policy used no such disclaimer. We conclude that the county had a "for cause only" termination agreement with its employees. Because Hollander could only be terminated for cause, he had a property interest sufficient to trigger due process protections. *See Hopkins,* 199 F.3d at 975 (citations omitted).

[¶ 17.] The next step in our analysis is to ascertain what amount of process Hollander was due. *Loudermill,* 470 U.S. at 541, 105 S.Ct. at 1493, 84 L.Ed.2d at 503 (citations omitted). Fundamentally, due process requires "notice and an opportunity to be heard." *Wuest v. Winner School District,* 2000 SD 42, ¶ 25, 607 N.W.2d 912, 917 (citations omitted); *In Re Cancellation of the Stabio Ditch Water Right on Spearfish Creek,* 417 N.W.2d 391, 394 (S.D.1987). These basic guarantees must be granted at a "meaningful time and in a meaningful manner." *Schrank v. Pennington County Bd. of Comm'rs.,* 1998 SD 108, ¶ 13, 584 N.W.2d 680, 682 (SD 1998) (citations and internal quotations omitted). Thus, we must ask

whether Hollander had notice and an opportunity to be heard, "before he was deprived of any significant property interest." *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493, 84 L.Ed.2d at 503–04 (citations and internal quotations omitted).

[¶ 18.] On February 10, 1999, Hollander received a notice to appear before the Douglas County Board of Commissioners "to consider the Douglas County Sheriff's recommendation that [his] employment be terminated." The notice detailed Hollander's rights and the basis for the Sheriff's recommendation. Hollander participated in the hearing with counsel. He had the opportunity to cross-examine the witnesses against him and to present evidence on his own behalf. This satisfies the procedural due process requirements of notice and an opportunity to be heard. Pre-termination hearings need not be elaborate and in general need not be full evidentiary hearings. *See Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495, 84 L.Ed.2d at 506 (citations omitted).

[¶ 19.] Hollander argues that he was effectively terminated before the county commission heard his case; therefore, he was not granted a pre-termination hearing. He believes that Sheriff Strehlow's letters and comments dismissing him effectively terminated his position. Strehlow on his own, however, had no authority to fire Hollander. Strehlow could only relieve Hollander of his official duties as a deputy sheriff. *See* SDCL 7–12–11. Furthermore, it is undisputed that Hollander was not removed from the county payroll until after the commissioners' decision. Therefore, Hollander suffered no significant detriment before his due process hearing. *See Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493, 84 L.Ed.2d at 503–04 (citations and internal quotations omitted).

**2. Sufficient Cause to Terminate**

[¶ 20.] In reviewing a case heard first by a county commission and then by a circuit court on appeal under SDCL 7–8–30, we accord no deference to

the circuit court's legal conclusions. *Coyote Flats, L.L.C. v. Sanborn County Comm'n*, 1999 SD 87, ¶ 7, 596 N.W.2d 347, 349 (citing *Gregoire v. Iverson*, 1996 SD 77, ¶ 14, 551 N.W.2d 568, 570; *Tri County Landfill Ass'n v. Brule County*, 535 N.W.2d 760, 763 (S.D.1995)). Although fact findings are viewed deferentially, the sufficiency of cause for termination is "fully reviewable as a legal question." *Green v. City of Sioux Falls*, 2000 SD 33, ¶ 21, 607 N.W.2d 43, 48 (citations omitted). The circuit court made few findings on the propriety of Hollander's termination in light of its holding that Hollander was an employee at will. Yet, what findings there were coincided with the commission's findings. We look to the findings of both the circuit court and the commission to decide if there was sufficient evidence to sustain the commission's ruling.

[¶ 21.] To justify termination for "disciplinary purposes" some degree of misconduct is required. Two specific instances identified by both the circuit court and the county commission can adequately be characterized as misconduct. It is undisputed that Hollander did not place his own name on the ticket he issued to De-Waard. Both the commission and the court were in a better position to decide whether to believe the Sheriff who said he told Hollander to "arrest" the suspect, or Hollander who said the command was merely to "transport ." The court ruled that Hollander had handled the call from Linda Vore improperly. Likewise, the commission found "that Tim Hollander started to scream at the victim telling her it was her fault ..." and "[t]hat Tim Hollander was very rude and unreasonable and showed great favoritism to the aggressor." We review such findings with deference because the circuit court and the commission had the opportunity to evaluate credibility firsthand. *See Tri County Landfill Ass'n*, 535 N.W.2d at 763. After reviewing the transcript, we cannot say these findings are clearly erroneous.

[¶ 22.] From our reading of the record, Hollander's misconduct is difficult to perceive as "major," but he acted at cross-purposes with the Sheriff and used questionable judgment, falling below the standard expected of objective law enforcement officers. As the Sheriff testified, it came down to a matter of trust. "The standard for determining whether misconduct rises to the level which justifies discharging an employee is lower than that which determines whether an employee's misconduct will deprive him of unemployment compensation." *City of Sioux Falls v. Miller*, 1996 SD 132, ¶ 12, 555 N.W.2d 368, 371 (citations omitted). Hollander's conduct in putting Strehlow's name on the ticket may not alone have been adequate to justify termination. This action, however, taken together with his unprofessional treatment of Vore will sustain his discharge for disciplinary purposes. Consequently, sufficient evidence supported a finding of just cause for dismissal.

[¶ 23.] Affirmed.

[¶ 24.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.