2001 SD 143

**David HOLLAND, Plaintiff and Appellant,**

v.

**FEM ELECTRIC ASSOCIATION, INC., A South Dakota Corporation, Defendant and Appellee.**

**No. 21835.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 1, 2001.

Decided Dec. 12, 2001.

Drew C. Johnson, Aberdeen, South Dakota, Attorney for plaintiff and appellant.

R. Alan Peterson of Lynn, Jackson, Schultz & Lebrun, Sioux Falls, South Dakota, and Vaughn Beck, Ipswich, South Dakota, Attorneys for defendant and appellee.

GILBERTSON, Chief Justice.

[¶ 1.] David Holland (Holland) was the General Manager and CEO of FEM Electric Association, Inc. (FEM), until August 2, 1999, when he was asked to voluntarily resign or he would be fired in response to employee complaints of personal harassment. Initially, Holland signed the proffered resignation but later rescinded it. The FEM Board of Directors then terminated his employment. The trial court denied both parties' Motions for Summary Judgment and remanded to the FEM Board of Directors for a post-termination hearing in accordance with FEM Employment Policy § 422. Both parties appeal. We affirm in part, reverse in part and remand for further proceedings.

## FACTS AND PROCEDURE [1]

[¶ 2.] Holland worked for FEM for over twenty years, but served most recently as General Manager and CEO of the company. Until the week before August 2, 1999, Holland had received no poor performance appraisals, warnings or reprimands regarding his job performance.

[¶ 3.] During the week before August 2, 1999, two FEM employees approached

---

**1.** The parties stipulated to the facts on pages 1–4 of the Joint Petition for Intermediate Appeal. There is no evidence, however, of a similar stipulation of facts before the trial court.

FEM's attorney with allegations of employee mistreatment and harassment by Holland. The attorney advised the two employees to obtain written statements from other employees with similar complaints. The employees acted on this advice and presented statements from seven of the ten full-time employees to the FEM Board of Directors. The Board met on August 1, 1999, without Holland's presence, reviewed the letters and voted to offer him the choice of resigning or being terminated, effective immediately.

[¶ 4.] The offer and letter of resignation, prepared by FEM's attorney, was presented to Holland on August 2, 1999. Holland signed the letter that day, but on August 6, he rescinded his resignation through his attorney. After he appeared before the Board to appeal his case, Holland's termination was affirmed by Board vote on August 17.

[¶ 5.] Holland filed suit for wrongful termination. Both parties' Motions for Summary Judgment were denied. Without making any determinations as a matter of law, the trial court remanded the case for a post-termination hearing in front of the FEM Board of Directors in compliance with FEM's Personnel Policy § 422.[2] Contending that their respective Motions for Summary Judgment should have been granted, both Holland and FEM appeal raising numerous issues which in substance amount to the following:

1. Whether Holland voluntarily resigned his position and therefore waived his right to sue for wrongful termination.

2. Whether Holland, as General Manager and CEO, was an employee at will and therefore subject to termination without cause.

3. Whether FEM's failure to provide Holland with a pre-termination hearing violated his Fourteenth Amendment right to procedural due process, thus making a post-termination hearing ineffective and improper.

## STANDARD OF REVIEW

[¶ 6.] This case involves determining whether FEM's Personnel Policy Manual amounts to an implied contract, exempting an employee from termination at will. "The existence and governing terms of any implied contract present questions of fact to be decided by a jury." *Jurrens v. Lorenz Mfg. Co. of Benson, Minn.*, 1998 SD 49, ¶ 9, 578 N.W.2d 151, 154 (citing *Lien v. McGladrey & Pullen*, 509 N.W.2d 421, 424 (S.D.1993)) (additional citations omitted).

[¶ 7.] Both parties appeal the denial of their Motions for Summary Judgment. A trial court's denial of summary judgment is reviewed as follows: "[a]ll reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law." *Holzer v. Dakota Speedway*, 2000 SD 65, ¶ 8, 610 N.W.2d 787, 792 (citing *Kimball Investment Land, Ltd. v. Chmela*, 2000 SD 6, ¶ 7, 604 N.W.2d 289, 292) (additional citations and internal citations omitted). "As we take an independent review of the record, we are not bound by the trial judge's factual assessments in granting [or denying] summary judgment." *Fritzel v. Roy Johnson Constr.*, 1999 SD 59, ¶ 7, 594 N.W.2d 336, 338 (citing *Spenner v. City of Sioux Falls*, 1998 SD 56, ¶ 7, 580 N.W.2d 606, 609).

---

2. FEM has adopted a Personnel Policy Manual, which contains various provisions governing the discipline and termination of employees.

## ANALYSIS AND DECISION

**[¶ 8.]  1.  Whether Holland voluntarily resigned his position and therefore waived his right to sue for wrongful termination.**

[¶ 9.]  FEM contends that Holland has no cause of action for wrongful termination because he voluntarily resigned his position. It is undisputed that Holland signed the letter of resignation offered to him on August 2, 1999. It is also undisputed that he withdrew his resignation in writing, through his attorney, on August 6, 1999. Thus, the question is whether Holland's rescission of his resignation was legally effective.

[¶ 10.]  Holland argues that the resignation was not signed voluntarily and is therefore, subject to rescission. Herein, it appears the Board made an offer not to terminate Holland involuntarily in exchange for his agreement to "voluntarily" resign. Board claims Holland accepted its contractual offer by his execution of the resignation. SDCL 53–11–2 sets forth the grounds on which one may rescind a contract:

> A party to a contract may rescind the same in the following cases only:
>
> (1) If consent of the party rescinding or of any party jointly contracting with him was given by mistake or *obtained through duress, fraud, or undue influence* exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party;

(emphasis added).  Holland does not indicate whether his resignation was signed under duress, fraud or undue influence; he alleges only that his resignation was not voluntary. This is a factual issue that must be determined by the trial court, with Holland bearing the burden of proof. *See Scotland Vet Supply v. ABA Recovery Service, Inc.*, 1998 SD 103, ¶ 10, 583 N.W.2d 834, 837; *Northwestern Pub. Serv. Co. v. Chicago & N.W. Ry. Co.*, 87 S.D. 480, 210 N.W.2d 158, 161 (S.D.1973).  Holland must produce clear and convincing evidence of duress, fraud, or undue influence before the rescission of his resignation may be considered valid. *Id.* Thus, Holland's assertion that the rescission or withdrawal of the resignation was effective merely because the Board had not acted upon it puts the cart before the horse.[3]

**[¶ 11.]  2.  Whether Holland, as General Manager and CEO, was an employee at will and therefore subject to termination without cause.**

[¶ 12.]  South Dakota is an employment-at-will state. SDCL 60–4–4 provides "[a]n employment having no specified term may be terminated at the will of either party on notice to the other, unless otherwise provided by statute." Under certain circumstances, however, an employer may choose to surrender this statutory power to hire and fire at will. *See Butterfield v. Citibank of South Dakota*, 437 N.W.2d 857, 859 (S.D.1989); *Osterkamp v. Alkota Mfg.*, 332 N.W.2d 275 (S.D. 1983). For such a surrender to be effective, the employer must affirmatively indicate its intent by adopting a personnel policy or manual explicitly providing that a for-cause termination procedure must be followed. *Hollander v. Douglas County, South Dakota*, 2000 SD 159, ¶ 14, 620 N.W.2d 181, 185 (citing *Butterfield*, 437 N.W.2d at 859); *Richardson v. East River Elec. Power Co-op., Inc.*, 531 N.W.2d 23 (S.D.1995). Alternatively, an implied con-

---

**3.**  Holland cites 76 Am.Jur.2d Unemployment Compensation, 114, for the proposition that if an employer has not yet acted upon the resig-nation before refusing to permit its withdrawal, the employee is presumed to have been involuntarily terminated.

tract may be created when the policy or manual "contains a detailed list of exclusive grounds for employee discipline or discharge and a mandatory and specific procedure which the employer agrees to follow prior to any employee's termination." *Hollander*, 2000 SD 159 at ¶ 14, 620 N.W.2d at 185 (quoting *Butterfield*, 437 N.W.2d at 859). If this surrender is made by express or implied contract, and the employer does not follow the proper procedure for terminating the employee, the employee may have a claim for wrongful termination.

[¶ 13.] In this case, FEM does have an established Personnel Policy Manual, which sets forth the procedure to be used for the discipline or termination of general co-op employees. FEM argues, however, that Holland was the General Manager and CEO of FEM, the only existing position appointed by the Board. As such, FEM contends Holland was subject to the "termination-at-will" provision in Article VI § 3 of FEM's Bylaws.[4] In the alternative, FEM argues if Holland was not an officer or agent terminable at will, then he is an employee subject to the "termination-without-notice" provision in § 422(B)(2)(c) of FEM's Personnel Policy Manual. Accordingly, the question of whether FEM followed proper procedure in terminating Holland depends upon the type of employment relationship that existed between the parties.

[¶ 14.] The type of employment relationship that existed between FEM and Holland, derived largely from the parties' intent, is a question of fact to be determined by the trial court. Likewise, the existence and terms of any implied contract between the parties, by virtue of FEM's Personnel Policy Manual, is also a question of fact to be determined by the trial court. *Jurrens*, 1998 SD 49 at ¶ 9, 578 N.W.2d at 154. Article VI § 3 of FEM's Bylaws provides "[a]ny officer or agent elected or appointed by the Board of Directors may be removed by the Board of Directors whenever in its judgment the best interests of the Cooperative will be served thereby." Article VI § 8 of FEM's Bylaws provides that the Manager/CEO is one of the positions that may be appointed by the Board. Thus, it seems clear to us that if the analysis were to stop here, Holland's employment as a Manager/CEO is employment at will. Yet, the trial court made no findings or conclusions on this issue.

4. Despite the claim of FEM that this is a termination-at-will employment relationship, when it served its letter of termination upon Holland, the letter drafted by FEM's attorney specifically stated the following reasons for an immediate resignation or termination:
   1. Incompetence of [sic] inefficiency.
   2. Violation of safety rules.
   3. Refusal to obey the policies of the Cooperative.
   4. Deceit and/or falsification of records.
   5. Continual tardiness.
   6. Personal harassment of another person while on the job.
   7. Improper handling of material bidding procedures.
   8. General inability to effectively work with company personnel.

The letter went on to declare "[a]s a result of *these* violations" Holland must immediately resign or be terminated. (emphasis added).
   Compare the above reasons for termination of Holland with the provisions for employee termination found in FEM's employee manual:
   1. Inadequate performance of work. . . .
   2. Habitual disregard of established hours of attendance. . . .
   3. Refusal to obey the policies of the Cooperative. . . .
   4. Unjustified absence without leave. . . .
   5. Failure to follow established safety procedures. . . .
   6. Physical assault or personal harassment of another person while on the job.

[¶ 15.] In continuing the analysis as required by this Court's precedent, Holland's employment relationship with FEM may override the at-will provision in FEM's bylaws. We have held that an employment contract, express or implied, may operate as a rescission or amendment to the bylaws if the board of directors possessed the power to make such an alteration under the business' articles of incorporation. *See Nelson v. WEB Water Dev. Ass'n, Inc.,* 507 N.W.2d 691, 694–95 (S.D. 1993); *Blote v. First Federal Sav. and Loan Ass'n of Rapid City,* 422 N.W.2d 834, 837 (S.D.1988). Therefore, Holland's employment relationship with FEM may give rise to an implied contract, amending or rescinding the at-will provision in the bylaws, and requiring a particular termination procedure be followed. Again, the trial court made no findings or conclusions on this issue. Therefore, we remand for a determination of the issues identified herein.

[¶ 16.] **3. Whether FEM's failure to provide Holland with a pre-termination hearing violated his Fourteenth Amendment right to procedural due process, thus making a post-termination hearing ineffective and improper.**

██ [¶ 17.] Holland claims his Fourteenth Amendment right to procedural due process was violated when he did not receive a pre-termination hearing as required by this Court's precedent. *See Hollander,* 2000 SD 159 at ¶ 18, 620 N.W.2d at 186. Holland contends that, because his rights have already been violated, a post-termination hearing cannot "un-ring" the proverbial constitutional bell. We do not agree.

██ [¶ 18.] "To establish a procedural due process violation, a plaintiff must demonstrate that he has a protected property or liberty interest at stake and that he was deprived of that interest without due process of law." *Hopkins v. Saunders,* 199 F.3d 968, 975 (8th Cir.1999) (citation omitted). First, the property interest must be derived from a source independent from the Constitution. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972); *Hollander,* 2000 SD 159 at ¶ 14, 620 N.W.2d at 185. Second, the individual must have been deprived of this right by a state actor. *See DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249, 258 (1989). The Fourteenth Amendment due process protections only proscribe *state action* that creates a deprivation of life, liberty, or property without due process of law. *See* U.S. Const. amend. XIV, § 1. It does not protect citizens from the actions of private individuals or private companies. While Holland may be able to demonstrate a legitimate property interest in continued employment, he cannot demonstrate that a state actor deprived him of that interest.[5] Therefore, there is no valid Fourteenth Amendment due process claim in this case.

## CONCLUSION

[¶ 19.] Despite the lack of any constitutional violation, the trial court's remand for a post-termination hearing is premature. As discussed above, if the trial court determines Holland is subject to being fired without cause, no hearing is necessary. If the trial court determines that Holland's conduct falls within FEM's Personnel Policy § 422(B)(2)(c), again no hearing is nec-

---

**5.** This does not necessarily leave a person in Holland's position without any legal remedies. Remedies may exist to enforce property rights by suit for breach of contract or violation of state statutes.

essary. Finally, if the trial court determines that a post-termination hearing is necessary, it must then decide whether this requirement was satisfied by Holland's August 17 appeal before the Board. In addition, this case is replete with genuine issues of material fact, making summary judgment improper at this time. Therefore, we affirm the trial court's denial of the parties' Motions for Summary Judgment, vacate the trial court's remand for a post-termination hearing, and remand the case for a determination of the issues identified in this opinion.

[¶ 20.] SABERS, AMUNDSON, KONENKAMP, Justices, and GORS, Acting Justice, concur.