#23785, #23827-rev & rem-DG

**2006 SD 60**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

\* \* \* \*

JOEL ABERLE,                                                    Plaintiff and Appellant,

  v.

CITY OF ABERDEEN,
a Municipality,                                                Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE LARRY LOVRIEN
Judge

\* \* \* \*

DREW C. JOHNSON
Johnson Law Office
Aberdeen, South Dakota                          Attorney for plaintiff
                                                              and appellant.


MARK A. ANDERSON
Aberdeen, South Dakota                          Attorney for defendant
                                                              and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 13, 2006

OPINION FILED **07/05/06**

#23785, #23827

GILBERTSON, Chief Justice

[¶1.] Joel Aberle, an employee of the City of Aberdeen, was terminated by the City and filed a wrongful termination suit. On a motion for partial summary judgment, the circuit court found Aberle was not an at-will employee as an implied employment contract existed, and that Aberle was wrongfully terminated in violation thereof. A bench trial on the issue of damages resulted in an award for past damages, and in lieu of future damages, the circuit court ordered the City to reinstate Aberle. Aberle appeals the circuit court's order for reinstatement. By notice of review, the City appeals the circuit court's ruling as to the existence of an implied employment contract and argues that it had the right to terminate Aberle as he was an at-will employee. The City also appeals the order for reinstatement. We reverse and remand concluding the City possessed a contractual right to terminate Aberle as an at-will employee.

## FACTS AND PROCEDURE

[¶2.] In 1995, Joel Aberle (Aberle) applied to the City of Aberdeen (City) for a maintenance worker position at the Aberdeen Regional Airport. The employment application stated: "If an employment relationship is established, I understand that I have the right to terminate my employment at any time and that the City of Aberdeen has a similar right." Aberle was hired for the position in November of 1995.

[¶3.] During his employment, City utilized "Standard Policy & Procedure #001," which detailed seven behaviors encouraged and expected by City and eleven behaviors that were discouraged and were labeled as "will not be tolerated." A copy of the policy acknowledging receipt of the information was signed by Aberle on

-1-

December 11, 1995, and was retained in his personnel file.  The document stated as its subject "Standards of Employment," with an effective date of September 18, 1989, and contained the following:

> Behaviors which will be encouraged and expected:
> 1. Neat appearance, exemplary conduct and cooperation with all departments.
> 2. Demonstration of courtesy and tact when dealing with the public, other employees, visitors, and all those involved in city government and its functions.
> 3. Participation in In-service Training Activities and safety procedures.
> 4. To familiarize and adhere to administrative and department policies, procedures and regulations.
> 5. Provisions made to pay for debts due, so to maintain the integrity of the City and its employees.
> 6. Make constructive suggestions for the betterment of the City.
> 7. Following the proper chain of command in complaints, suggestions and grievances.
>
> Behaviors which are discouraged and will not be tolerated:
> 1. Unwillingness to accept work and/or assignments.
> 2. Appearing for duty or working under influence of illicit drugs and/or alcohol.
> 3. Excessive absenteeism and/or misuse of sick time.
> 4. Thievery, misappropriation or negligent care of city or others['] personal property.
> 5. Refusal to comply with proper directions of supervisory personnel.
> 6. Threatening, offensive or abusive conduct (verbally or physically) towards supervisory, fellow employees and city officials, or the general public.
> 7. The acquisition, discussion or release of confidential material without proper authority.
> 8. Threaten or attempt to use personal or political influence.
> 9. Desertion of duty post; including sleeping while on duty.
> 10. Falsification or misrepresentation of information, records, or documents.
> 11. Willfully violat[e] any of the provisions of Civil Service or Administrative or Department rules or regulations.
>
> I have read and understood the expected practices outlined above.  While employed by the City of Aberdeen, I agree to conform in these practices.  I understand that to engage in any of the listed non-acceptable behaviors will result in my being

considered for disciplinary action or immediate discharge. *I understand that I have the right to terminate my employment at any time and that the City has a similar right.* (emphasis added).

[¶4.]     In addition, City also used a publication titled "General Employee Policies" that included a section on disciplinary action. That section stated: "It is understood that there are offenses for which disciplinary action may be warranted, including termination."

[¶5.]     On November 28, 2003, Aberle received a letter from City indicating that he was being terminated, but would have the opportunity to meet with several City officials to show cause why he should not be terminated. The letter stated that Aberle had been determined to have violated three of the affirmative and two of the prohibited items in Standard Policy & Procedure #001.

[¶6.]     Aberle met with several City officials on December 9, 2003. At the hearing, City presented no evidence and called no witnesses. Aberle objected to the procedural format of the hearing due to his inability to examine City's witnesses. He claimed he was entitled to due process protections as he was not an at-will employee. Aberle received written notice of termination on December 10, 2003, which again stated the same violations of Standard Policy & Procedure #001 as reason for the termination.

[¶7.]     Aberle requested a post-termination hearing, claiming he was not an at-will employee, but instead could only be terminated for cause after compliance with pre- and post-termination hearings. His request for a post-termination hearing was denied by City, which claimed the procedure was not necessary

because Aberle's status as an at-will employee did not entitled him to due process protection in his termination.

[¶8.] At the time of his discharge, Aberle was receiving $12.19 per hour for a standard forty-hour work week, plus heath insurance benefits and a four percent retirement match, which brought his weekly wage to $606.85, or $121.37 per day. His remaining work life expectancy was seventeen years at the time of discharge for a total of 4,420 days of work life.

[¶9.] Aberle was unemployed without work for eighty-three days as he searched for a new job. On April 6, 2004, Aberle obtained employment with Jensen Rock and Sand, (Jensen) at a rate of $9.00 per hour, but without health or retirement benefits. His total weekly salary at Jensen was $360.00, or $72.00 per day. Aberle continued to look for work while employed with Jensen, and eventually found a position with HRS Food Service (HRS) on June 7, 2004. His hourly rate at HRS was $9.75 per hour plus $28.38 for health benefits, but no retirement match. His total weekly wage at HRS was $418.38, or $83.68 per day.

[¶10.] Aberle filed suit against City claiming wrongful discharge and requesting monetary damages. Aberle claimed lost wages while unemployed of $10,073.71. He also claimed lost wages for the difference between his wages while employed with Jensen and what his wages would have been if he had remained employed with City in the amount of $2,172.28. Aberle stated that he was satisfied with his position with HRS and planned to work for HRS until retirement. Therefore, he claimed the difference between his daily wage rate with HRS and his wage rate with City times his remaining life work expectancy for a total of $166,589.90.

[¶11.] Aberle moved for summary judgment on the issue of whether he was an at-will employee or a contract employee. Aberle argued that as a contract employee he was entitled to a post-termination hearing. As evidence of his status as a contract employee, Aberle submitted City's General Employee Policies manual and Standard Policy & Procedure #001. Finally, Aberle argued that he was wrongfully terminated as he was not provided a post-termination hearing.

[¶12.] City argued Aberle was an at-will employee and therefore no post-termination hearing was required. City offered the same two documents as evidence that it did not waive its right to terminate Aberle at will under the language of the documents.

[¶13.] The circuit court found that an implied contract existed between City and Aberle by virtue of the General Employee Policies manual and Standard Policy & Procedure #001, and by City acting upon these documents in its notice of termination to Aberle. By adopting the offenses stated in Standard Policy & Procedure #001 and stating the alleged violations were the basis for the termination, the circuit court concluded that City waived the statutory presumption that Aberle was an at-will employee. The circuit court concluded that Aberle was a contract employee who could be terminated only with notice and with cause after pre-termination and post-termination hearings. Further, City's failure to provide due process type pre-termination and post-termination hearings violated Aberle's right to due process and subjected him to a wrongful termination.

[¶14.] Thereafter, a bench trial was scheduled on the issue of damages. City raised as a defense that Aberle failed to mitigate damages. City submitted evidence to show that several fields of employment with the same or higher wages as his

position with HRS, and for which Aberle was qualified, were available in the Aberdeen area. City argued that his failure to continue to search for a position with a higher salary constituted a failure to mitigate his damages.

[¶15.] Aberle was able to establish that he conducted reasonable work searches throughout the course of his unemployment and while working at Jensen, up until the time he secured the position with HRS. However, the circuit court did not make a finding as to whether Aberle failed to mitigate his damages after accepting employment with HRS. Instead, the circuit court ordered specific performance in lieu of determining Aberle's damages for future pay. The circuit court ordered City to reinstate Aberle to his former position, and awarded damages of $37.69 per day from June 7, 2004, the date Aberle began working for HRS, up until the date City rehired Aberle at his former rate of pay and benefits plans.

[¶16.] Aberle raises one issue for our review: Whether the circuit court erred when it ordered City to reinstate Aberle to his former position. By notice of review, City raises the same reinstatement issue, and also raises the issue of whether City retained the right to terminate Aberle under an at-will term of employment. We will address City's at-will issue first, as it is the dispositive issue for this case.

## STANDARD OF REVIEW

[¶17.] The circuit court's ruling on a summary judgment will be upheld on appeal when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Titus v. Champan, 2004 SD 106, ¶13, 687 NW2d 918, 923 (quoting SDCL 15-6-56(c)). "We will affirm when no genuine issues of material fact exist, and the legal

questions have been correctly decided." *Id.* (citing Holzer v. Dakota Speedway, 2000 SD 65, ¶8, 610 NW2d 787, 791 (citing Bego v. Gordon, 407 NW2d 801, 804 (SD 1987)). On appeal, we view all reasonable inferences drawn from the facts in favor of the non-moving party. *Id.* (citing Morgan v. Baldwin, 450 NW2d 783, 785 (SD 1990)). The moving party bears the burden to clearly show the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Id.* The circuit court's conclusions of law are reviewed de novo. *Id.* (citing City of Colton v. Schwebach, 1997 SD 4, ¶8, 557 NW2d 769, 771)).

## ANALYSIS AND DECISION

[¶18.] **Whether an express or implied contract existed between the City and Aberle that governed the conditions under which the City could terminate Aberle's employment.[1]**

[¶19.] SDCL 53-1-3 provides that "[a] contract is either express or implied. An express contract is one, the terms of which are stated in words. An implied contract is one, the existence and terms of which are manifested by conduct." Only when parties do not expressly agree will the law intercede and determine whether the conduct of the parties has created an implied contract. Jurrens v. Lorenz Mfg. Co. of Benson, Minn., 1998 SD 49, ¶6, 578 NW2d 151, 153 (citing Ryken v. Blumer,

---

1. Aberle argues that the City did not properly preserve this issue for appeal because it failed to object to the circuit court's proposed findings of fact and conclusions of law. On appeal we conduct a limited review as to whether the circuit court's findings of fact support the conclusions of law without regard to whether the issue was properly preserved below. Premier Bank, N.A. v. Mahoney, 520 NW2d 894, 895 (SD 1994) (citing Huth v. Hoffman, 464 NW2d 637, 638 (SD 1991)). In the instant case, we limit our review to whether the two documents submitted on the motion for summary judgment as a matter of law establish an express or implied contract of employment.

307 NW2d 865, 868 (SD 1981)). Therefore, the existence of an express contract precludes the existence of an implied contract. *Id.* (quoting 66 AmJur2d *Restitution and Implied Contracts* § 6, at 948-49 (1973)).

[¶20.]     In the context of employment relationships, South Dakota is an employment-at-will state per the provisions of SDCL 60-4-4.[2] Should a contract exist between the employer and the employee, the terms of the contract control over the provision of the statute. Obviously the two parties may, as part of an employment contract, agree that the employee is employed under an at-will term of employment.

[¶21.]     However, an employer may surrender its statutory at-will power via either an express or implied contract. Holland v. FEM Elec. Ass'n, Inc., 2001 SD 143, ¶12, 637 NW2d 717, 720 (citing Butterfield v. Citibank of South Dakota, N.A., 437 NW2d 857, 859 (SD 1989); Osterkamp v. Alkota Mfg., 332 NW2d 275 (SD 1983)). An express surrender occurs when the employer affirmatively indicates such intent by adopting written personnel policies or manuals that explicitly state that a for-cause termination procedure must be followed. *Id.* (citing Hollander v. Douglas County, South Dakota, 2000 SD 159, ¶14, 620 NW2d 181, 185; Richardson v. East River Elec. Power Co-op, Inc., 531 NW2d 23 (SD 1995)). In such instances, an express contract of employment is created that contains specific terms surrendering the statutory at-will power. *Id.* The second manner in which an

---

2.     SDCL 60-4-4 provides: "An employment having no specified term may be terminated at the will of either party on notice to the other, unless otherwise provided by statute."

employer may surrender its statutory at-will power occurs when an employer impliedly creates such a contract. *Id.* When no explicit surrender of the statutory at-will power is made by the employer, but policies or handbooks "contain[] a detailed list of exclusive grounds for employee discipline or discharge and a mandatory or specific procedure which the employer agrees to follow prior to any employee's termination[,]" an implied contract is created that binds the employer to the for-cause termination procedure. *Id.* (quoting *Hollander*, 2000 SD 159, ¶14, 620 NW2d at 185).

[¶22.]     The hallmark of both an implied and an express surrender of the statutory power to terminate employees at will is a clear intention on the part of the employer. *Butterfield*, 437 NW2d at 859. An employer creates a protected property right in continued employment for its employees when it surrenders its statutory at-will power and adopts a discharge policy that provides termination will occur only for cause. *Hollander*, 2000 SD 159, ¶15, 620 NW2d at 185 (citing Hopkins v. Saunders, 199 F3d 968, 975 (8thCir 1999) (citing Spitzmiller v. Hawkins, 183 F3d 912, 916 (8thCir 1999))). Whether the surrender is made by an express or implied contract, if the employer does not follow proper termination procedures an employee who has been terminated may have a wrongful discharge claim. *Holland*, 2001 SD 143, ¶12, 637 NW2d at 721.

[¶23.]     However, the fact that an employment contract is memorialized in writing does not in and of itself constitute a surrender of an employer's statutory at-will power. *Butterfield*, 437 NW2d at 860 (quoting Toussaint v. Blue Cross and Blue Shield of Mich., 292 NW2d 880, 890 (Mich 1980)). A written employment

contract may include both guidelines for employee conduct and behavior and an explicit reservation of the at-will power. *Id.* Such an explicit reservation does not require the use of any specific language, but it must clearly indicate that the employer reserves the right to fire an employee at any time when it deems discharge to be appropriate. *Id.* at 859.

[¶24.] In the instant case, the circuit court found that an implied contract of employment existed as a matter of law. It found that the "Standards of Employment" and the General Employee Policies, plus City's conduct of identifying specific violations of standards by Aberle, showed a clear intent on the part of City to relinquish its statutory at-will power.

[¶25.] The circuit court erred when it held the two documents created an implied contract of employment. The two documents which carry Aberle's signature contain written and explicit terms of employment and constitute an express contract as a matter of law concerning his at-will status. This is consistent with the terms of SDCL 53-1-3 which declare that implied contracts are created "by conduct" rather than solely by terms of a document. Thus, because an express contract existed as to at-will status under the two documents, an implied contract could not exist. The circuit court failed to consider the significance of the last line of the "Standards of Employment" portion of the employment contract which states: "I understand that *I have the right to terminate my employment at any time and that the City has a similar right.*" (emphasis added). This statement serves as an explicit reservation of the right to terminate employees at any time, without notice

or regard to violations of the "Standards of Employment." That is, it is an explicit contractual reservation of the statutory power to terminate an employee at will.

[¶26.]    Moreover, the circuit court's erroneously relied on the policy encouraging and discouraging certain behaviors. This policy did not create an implied contract because, as we noted in *Holland,* "the polic[ies] or manual[s][must] 'contain[] a detailed list of exclusive grounds for employee discipline or discharge and a mandatory and specific procedure which the employer agrees to follow prior to any employee's termination[,]'" before an implied contract may be found to exist. However, the City of Aberdeen's policy contained neither an exclusive list of grounds for discipline nor a mandatory or specific procedure for employee termination. Consequently, it did not create an implied contract.

[¶27.]    Because we reverse on the threshold issue and find that there was no implied contract of employment that guaranteed due process termination rights to Aberle, we do not need to consider whether reinstatement was the proper remedy.

[¶28.]    We reverse and remand for action consistent with this opinion.

[¶29.]    KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶30.]    SABERS, Justice, dissents.


SABERS, Justice (dissenting).

[¶31.]    As noted in *Wilson v. Great Ne. Ry. Co.*, 83 SD 207, 211, 157 NW2d 19, 21 (1968): "The question presented . . . is whether or not there is a genuine issue of fact. It does not contemplate that the court shall decide such issues of fact, but shall determine only whether one exists." (citation omitted). "If a court, in ruling on

a motion for summary judgment, engages in fact-finding, reversal is required."

Johnson v. Rapid City Softball Ass'n, 514 NW2d 693, 698 (SD 1994) (quoting Kropff

v. City of Monroe, 340 NW2d 119, 120 (MichCtApp 1983)). The same rule applies to

the South Dakota Supreme Court.

**The circuit court erred when it ruled as a matter of law that City created an implied employment contract based upon its written employment policies and the Supreme Court compounds the error by reversing and remanding when there are genuine issues of material fact to be decided by the jury.**

[¶32.]     South Dakota is an employment-at-will state per the provisions of

SDCL 60-4-4: "An employment having no specified term may be terminated at the

will of either party on notice to the other, unless otherwise provided by statute."

However, an employer may surrender this statutory power to hire and fire at will.

Holland v. FEM Electric Ass'n, Inc., 2001 SD 143, ¶11, 637 NW2d 717, 720 (citing

Butterfield v. Citibank of South Dakota, 437 NW2d 857, 859 (SD 1989); Osterkamp

v. Alkota Mfg., 332 NW2d 275 (SD 1983)). An employer may expressly surrender

its at-will statutory power by affirmatively indicating such intent and by adopting

personnel policies or manuals that explicitly provide "that a for-cause termination

procedure must be followed." *Id.* (citing Hollander v. Douglas County, South

Dakota, 2000 SD 159, ¶14, 620 NW2d 181, 185 (additional citations omitted)).

[¶33.]     In addition, an implied surrender will be found to exist when the policy

or manual "'contains a detailed list of exclusive grounds for employee discipline or

discharge and a mandatory and specific procedure which the employer agrees to

follow prior to any employee's termination.'" *Id.* (quoting *Hollander*, 2000 SD 159,

¶14, 620 NW2d at 185) (additional citation omitted)). The hallmark of both an

implied and an express surrender of the statutory power to terminate at will is a clear intention on the part of the employer. *Butterfield*, 437 NW2d at 859. However, "'[t]he existence and governing terms of any implied contract present questions of fact to be decided by a jury.'" *Holland*, 2001 SD 143, ¶6, 637 NW2d at 719 (quoting Jurrens v. Lorenz Mfg. Co. of Benson, Minn., 1998 SD 49, ¶9, 578 NW2d 151, 154 (citing Lien v. McGladrey & Pullen, 509 NW2d 421, 424 (SD 1993))).

[¶34.]     In this case, whether City's General Employee Policies manual and Standard Policy & Procedure #001 created an implied contract of employment was an issue of fact, and if it did, also at issue was what terms governed the contract. As such, the issue of whether an implied contract existed, and if so, the determination of its terms were incapable of being resolved on a motion for summary judgment, as both were material facts in dispute. The circuit court engaged in impermissible fact finding when it determined that an implied contract of employment existed, and that the contract provided Aberle with the right to both a pre- and post-termination hearing governed by due process standards. Given that the circuit court engaged in fact finding with regard to genuine issues of material fact on a motion for summary judgment, reversal and remanding is required. The majority gets that part right but then proceeds to enter the opposite result for the City of Aberdeen as a matter of law despite the fact that there are genuine issues of material fact. This Court should not compound the error by reversing and remanding and then entering the opposite result when there are genuine issues of material fact to be decided by the jury.

[¶35.]    We should reverse and remand to the circuit court for jury trial on the issue of whether an implied contract of employment existed and for a determination as to its terms.